In re PILCHER'S ESTATE. VON PILCHER v. PILCHER.

No. 7145. Decided August 26, 1948. (197 P. 2d 143.)

See 33 C. J. S., Executors and Administrators, sec. 47. Presumptions flowing from marriage, see note, 77 A. L. R. 729. See, also, 35 Am. Jur. 306.

*Leon Fonnesbeck,* of Logan, for appellant.

*Bullen & Bell,* of Logan, for respondent.

PRATT, Justice.

This action is in the form of a petition for removal of administratrix and for letters of administration. The lower court found for the contestant, and by its decree revoked and cancelled letters of administration theretofore issued to the administratrix, Mildred Pilcher, who prosecutes an appeal to this court.

Mildred Pilcher was duly appointed administratrix of the estate of William Pilcher, deceased, as his surviving widow. In her petition for letters of administration she named as heirs, besides herself, three children of William Pilcher by a former marriage. During the course of administration, Lee Brown who was the son of Mabel Von Pilcher and William Pilcher, came to Mildred purporting to represent all the children of Mabel Von Pilcher and William Pilcher and insisted upon a settlement with her on behalf of the heirs. Under this settlement agreement Mildred paid him the sum of $3,000.00 and certain personal property belonging to the decedent. Mildred proceeded to administer the estate up to and including a petition for settlement of final account. Notices for petition for "Settlement of Final Account and Distribution of Estate" were duly mailed to the named heirs. Thereafter, the contestant, Mabel Von Pilcher, through her attorney filed an "Objection to

Final Account and Petition for Distribution" and also served and filed a petition for "Removal of Administratrix and for Letters of Administration." No notice of this latter petition was given to the heirs.

The facts as revealed by the testimony and exhibits indicate that the deceased married Mabel Von Pilcher in Lyon County, Kansas in 1901. Thereafter they lived as husband and wife for several years at Hartford, Kansas, during which time six children were born to them, four of whom are now living. The parties separated in 1925. Thereafter the parties were in contact with each other to some extent, and as testified to by Mabel Von Pilcher on cross-examination, he told her he had divorced her. In 1926, apparently in reliance upon what the deceased told her regarding a divorce, Mabel Von Pilcher began living with one Hal F. Showers, ostensibly as his wife, although she denied at the trial that she was his wife.

The decedent and Mildred Pilcher were married June 21, 1941, at Logan, Utah. At that time decedent was fifty-nine years of age, and Mildred was nineteen. Mildred testified that decedent told her he had not been married, but that about one month after their marriage she discovered his prior marriage, at which time he assured her that he had secured a divorce. His explanation, as testified to by Mildred, was that he was afraid that if he told her before, she would not have married him.

For some time during the years 1942 and 1943, Mildred Pilcher and the deceased lived in California, and Mabel Von Pilcher and Hal F. Showers, holding themselves out as husband and wife, also lived in California, and the two families became fairly well acquainted, visiting each other at intervals, and living in close proximity to each other.

Mabel Von Pilcher testified that while the families were living in California, the decedent came to her and informed her that he had never divorced her. In addition, she testified that she had never divorced him, and had received no

papers in any divorce action begun by him. It is on this basis that she seeks to sustain her petition for removal of administratrix, on the ground that she, not Mildred, is the widow of the deceased, and as such entitled to letters of administration.

The appellant presents several assignments of error, some of which relate to the acquisition and repair of certain properties, and are clearly not within the issues of this contest. Of the other issues, we believe the issue of estoppel and that raised as to burden of proof are determinative of this appeal.

Before proceeding however to these matters, we have before us preliminarily a matter raised by the appellant relative to the admission of certain testimony given by Mabel Von Pilcher. She testified to a conversation held with the decedent in 1943 wherein he indicated to her that he had never divorced her. It is contended by the appellant that this testimony should not have been admitted, being a violation of Section 104-49-2, U. C. A. 1943, frequently spoken of as the "Dead Man Statute." This was not however an action against the estate in any sense. The contest is to determine the respective rights of the parties in relation to the estate. It was not error under the cited statute to allow the contestant to testify as she did. See *Miller* v. *Livingstone,* 31 Utah 415, 88 P. 338, and an article by Mr. Justice James H. Wolfe, 13 Rocky Mountain Law Review 282, (June, 1941) reprinted in the Utah Bar Bulletin, Vol. XI, Nos. 7 & 8, July-August, 1941, discussing this problem.

Section 102-4-1, U. C. A. 1943, provides the order of priority as to parties who are entitled to administration of the estate of a decedent. Sec. 102-4-3, U. C. A. 1943, provides that letters must be granted to any interested applicant, though it appears that there are other persons having better rights to the administration, when such persons fail to appear within three months after the

death of the decedent and claim the issuance of letters to themselves. In the case *In re Smith's Estate,* 85 Utah 606, 40 P. 2d 180, this court held that after the three month period has expired the person who was entitled to preference has thereafter no greater right to administer than does any other competent qualified person. This being so, it appears that Mabel Von Pilcher does not stand in a position where she herself would be entitled as of right to lay claim to the administration of the estate, since admittedly more than five months had expired since the death of William Pilcher before any action was taken by her.

Aside from this however, the fact that Mabel Von Pilcher admitted knowing of the death of William Pilcher soon after it occurred; the fact that she lived with her daughter, Bernice Shaffer, who received notice of the application by Mildred Pilcher for letters of administration, and thus we may safely assume knew of Mildred's petition; that she also admitted some knowledge of the settlement agreement proposed by her son, Lee Brown, and actually put into effect between Lee and Mildred, as administratrix (Mabel Von Pilcher was present in the home of her daughter Bernice Shaffer when Lee called Bernice after having effected the settlement with Mildred) ; and the fact that she stood by while Mildred administered the estate up to a petition for final distribution, constitute a basis for holding that she has thus acquiesced in the administration of the estate, by Mildred, and she may not now come forward and raise the question of Mildred's capacity to administer. 21 Am. Jur. 444, Sec. 119, states the rule as follows:

"* * * one entitled to administration, who stands by with knowledge of the application of another for appointment and the fact that he is administering upon an estate, is estopped to assert his prior right and claim the appointment made to be invalid."

A similar rule is expressed in 33 C. J. S., Executors and Administrators, § 72, page 997, as follows:

"Heirs or next of kin, by acquiescing in the appointment of an administrator, may be estopped to question the propriety of making the appointment."

See also *Manning* v. *Leighton,* 65 Vt. 84, 26 A. 258, 24 L. R. A., 684, and *Mitchel* v. *Dreher,* 150 S. C. 125, 147 S. E. 646, to the same effect.

At the conclusion of the arguments, after testimony was in, the court had this to say:

"I think the question that's before the court is whether or not the administratrix of the estate of William Pilcher is entitled to letters of administration, whether she's the heir of William Pilcher. Now as I understand the law, when a contest is filed such as a contest in this case where it alleges that the administratrix is not the widow of the deceased and is not an heir at law, then I think the burden is upon the administratrix to show that first. In this case there is no doubt, there can't be any doubt of the marriage between Mr. Pilcher and his first wife, the contestant. That has been proved by her own evidence, and if that relationship was once established, then I believe that the burden is upon the purported administratrix to show that that relationship has terminated, that she is in fact the widow of the deceased and an heir at law."

From this excerpt it is apparent that the trial court regarded the administratrix as having the burden to prove a divorce between the decedent and Mabel Von Pilcher. In support of this proposition, respondent cites the case *In re Peters' Estate,* 1923, 73 Colo. 271, 215 P. 128, 33 A. L. R. 24, which case held that the burden of proving a marriage is on the person seeking to qualify as administratrix, and that this same burden is upon one whose appointment as administratrix is challenged. While this may well be a proper rule, it is inapplicable to the present case. The administratrix in this instance has established a marriage with the deceased, and by virtue thereof has been appointed administratrix. The contest is *not to determine whether there ever was a marriage* between Mildred and William Pilcher, but rather to determine if that marriage was valid.

The fact situation presented to us by this appeal is similar to that in the case *In re Brugnoli's Estate,* 1925, 97 N. J. Eq.

349, 127 A. 165, 2 N. J. Misc. 422, where Elvira Brugnoli was granted letters of administration on the estate of Ormisda Brugnoli, deceased, as his surviving widow. The order granting letters was appealed from on the ground that the marriage was not valid, Elvira having a husband living at the time of her marriage to Brugnoli. The court held that the presumption was in favor of the validity of the second marriage, and the burden of proof to establish the invalidity of the marriage between Eliva and the deceased was on the party asserting it. This is a rule which has become well established in our law, together with the reasons therefor. Other cases so holding include the following: *In re St. Clair's Estate*, 1934, 46 Wyo. 446, 28 P. 2d 894; *In re De Force's Estate*, 1926, 119 Or. 556, 249 P. 632; *In re Jubala's Estate*, 1936, 40 N. M. 312, 59 P. 2d 356; *In re Rash's Estate*, 1898, 21 Mont. 170, 53 P. 312, 69 Am. St. Rep. 649; *Sam* v. *Sam*, 1935, 172 Okl. 342, 45 P. 2d 462; *Hatfield* v. *United States*, 2 Cir., 1942, 127 F. 2d 575; *J. J. Cater Furniture Co.* v. *Banks*, 1943, 152 Fla. 377, 11 So. 2d 776; *Nicholas* v. *Idaho Power Co.*, 1942, 63 Idaho 675, 125 P. 2d 321. Other cases to like effect will be cited later in connection with the question of the proof necessary to rebut the presumption thus arising. The rule has been recognized in Utah in the case *In re Wo-Gin-Up's Estate*, 57 Utah 29, 192 P. 267, in which case however, the presumption was held not to apply since the divorce in that case was admitted, but held insufficient to constitute a divorce.

We hold that where, as here, the first wife attacks the validity of a marriage by her husband to a second wife, then the burden of proof rests with the first wife, after proving her marriage, to rebut the presumption of divorce arising from the proof of the second marriage. In view of the many years that elapsed during which contestant and deceased lived apart and with others in family relationship, this case is particularly strong evidence of the merit of the rule.

The burden of proof then was erroneously placed upon the administratrix. However, the respondent contends that even if this is true, the respondent has in fact sustained the burden of proof. If this is so, then the error of the lower court in misconceiving the burden of proof is not prejudicial. We look then to the evidence adduced to determine whether the respondent has in fact sustained the burden which properly should have been hers.

Mable Von Pilcher by her testimony indicated at least three states in which William Pilcher may have lived after leaving her and before he married Mildred—a period of sixteen years. Those states are Colorado, Montana and Utah. There may well have been others, although she indicates that she was more or less in contact with him during this time. It is possible that Pilcher may have divorced her in any one of those states, and either she did not get notice thereof by reason of the fact that she also moved about considerable and such notice may not have reached her if mailed, or by reason of the fact that he may have obtained a divorce after publication of summons. Mildred, the administratrix, testified that Pilcher told her he divorced his first wife in Colorado. This is a matter which may well be taken into account, in determining, under a proper theory of the burden of proof, whether or not that burden has been sustained. Mabel testified that he told her in 1943 that he had not divorced her. She testified that she did not at any time receive papers in connection with a divorce action started by William Pilcher, and that she had never started divorce proceedings against William Pilcher. Against this is testimony elicited from her on cross-examination that he told her many years earlier in Billings, Montana that he had divorced her, and testimony by Mildred that he told her that he had divorced his first wife.

The cases are numerous which hold that a mere declaration by the first wife that she had not obtained a divorce

and that she had never been served with papers in a divorce action is not sufficient to rebut the presumption in favor of the validity of the second marriage. *Kolombatovich* v. *Magna Copper Co.*, 1934, Ariz. 30 P. 2d 832; *Sanders* v. *Sanders*, 1938, Ariz., 79 P. 2d 523; *In re Borneman's Estate*, 1939, 35 Cal. App. 2d 455, 96 P. 2d 182; *Marsh* v. *Marsh*, 1926, 79 Cal. App. 560, 250 P. 411; *Everett* v. *Standard Accident Ins. Co.*, 1920, 45 Cal. App. 332, 187 P. 996; *Griggs* ɪv. *Pullman Co.*, 1931, Mo. App., 40 S. W. 2d 463; *Holman* v. *Holman*, 1926, Tex. Com. App., 288 S. W. 413; *Pittinger* v. *Pittinger*, 1901, 28 Colo. 308, 64 P. 195. See also *Young* v. *Young*, 1918, 213 Ill. App. 402; *Lathan* v. *Lathan*, 1928, 175 Ark. 1037, 1 S. W. 2d 67; *Hale* v. *Hale*, 1913, 40 Okl. 101, 135 P. 1143; *Smith* v. *Smith*, 1942, 169 Or. 650, 131 P. 2d 447. Very little, if any, weight is added to the contestant's testimony by the assertion that William Pilcher told her in 1943 that he had not divorced her. The testimony is uncorroborated and contrary to that expressed by her actions after the conversation had allegedly taken place. She admitted on cross-examination that he had previously told her that he had divorced her, and Mildred also had testified to this effect. The conduct of the first wife after hearing this startling revelation, as indicated by her testimony and that of Mildred, lends little credence to her story. She continued to live with Showers as before, and continued to associate with Mildred and William Pilcher on the same terms as before. We should scarcely be justified in holding that one such isolated bit of testimony, subject to the imperfections noted amounts to sustaining the burden of proof to overcome a presumption which has been given such strong force and effect in our legal system. The following quotations serve to indicate the strength given to this presumption, over and above that ordinarily given a presumption:

From *Griggs* v. *Pullman Co.*, 1931, Mo. App., 40 S. W. 2d 463, 464:

"When a second marriage is shown, it is clothed with every presumption of validity. The law presumes innocence, not guilt; moral-

ity, not immorality; marriage, not concubinage. If the validity of the second marriage is attacked, the burden is on the attacking party to prove its invalidity, and if, in assuming this burden, which the law demands, it becomes necessary to prove a negative, he must do so. The presumption in favor of the validity of the second marriage is not to be lightly repelled. It is not to be broken in upon or shaken by a mere balance of probability. The evidence for the purpose of repelling it must be strong, distinct, satisfactory, and conclusive * * *."

From *Smith* v. *Smith*, 1942, 169 Or. 650, 131 P. 2d 447:

"Plaintiffs, in challenging the validity of their father's second marriage, have the burden of proof. There is a strong presumption that such marriage is valid. Indeed, it is one of the strongest disputable presumptions known in law. * * *"

From *Holman* v. *Holman*, 1926, Tex. Comp. App., 288 S. W. 413, 414:

"Whenever a marriage is assailed as being invalid on account of a prior marriage having been contracted by one of the parties to the assailed marriage, such prior marriage is presumed to have been dissolved before the second marriage was consummated. [Citing authorities] This presumption in favor of the validity of the second marriage must prevail, unless rebutted by evidence which negatives the effective operation of every possible means by which a dissolution of such prior marriage could have been effected."

Other cases take the view that production of records or testimony of persons having examined the records in some of the places where the other spouse was known to have established residence is not enough to overcome the presumption, absent a showing that these were the ■ only places such spouse established sufficient residence so as to enable him or her to secure a divorce. *In re Borneman's Estate*, supra; *Everett* v. *Standard Accident Ins. Co.*, supra; *Young* v. *Young*, supra; *Hale* v. *Hale*, supra.

The trial court erred in ruling that the burden of proof was on the administratrix and consequently in ruling that she had failed to sustain that burden. An examination of the evidence fails to reveal that the contestant has in fact sustained the burden of proof which should have been

imposed upon her in any case. Possibly under a proper theory of the burden of proof she could have done so. The findings of fact so far as they relate to the issues of surviving widow and heirship at law and the conclusions of law based thereon must be held to be in error. In view of our holding that Mabel Von Pilcher is estopped to contest the appointment of Mildred Pilcher as administratrix, it would not ordinarily have been necessary for this court to go into the matter of burden of proof. However, in view of the rights which may otherwise be affected, and the "Objection to Final Account and Petition for Distribution of Estate" that was filed, we are constrained to indicate the error of the lower court in this regard.

For these reasons, the judgment of the lower court is set aside, and the case remanded with directions to dismiss the "Petition for Removal of Administratrix and for Letters of Administration," and for further proceedings not inconsistent with this opinion. Costs to the appellant.

McDONOUGH, C. J., and WOLFE, and LATIMER, J., concur.

WADE, Justice.

I concur. But I find much confusion in the decisions both of this and other courts as to the effect of a presumption. In the hope of clarifying some of these matters, I add this opinion.

The prevailing opinion recognizes that a presumption may have the effect of requiring the party, who claims the facts are contrary to such presumption, to not only produce some evidence that such is the fact, but also to persuade the trier of the facts not only by a mere preponderance of the evidence but by clear, convincing and conclusive evidence. This court has often said that a presumption only determines the burden of producing some evidence, and that when evidence is produced on the existence of a fact which would otherwise be presumed, the presumption drops out of the case and the

facts must be determined from the evidence as though there were no presumption. That such is a correct statement of the law as to many presumptions there can be no doubt, but in other cases a presumption is held to go much further. In two cases we seem to have held that a presumption cannot change the burden of persuasion, under the law of this state, even under a statute which expressly so provides. *Buhler* v. *Maddison,* 109 Utah 267, 176 P. 2d 118, 168 A. L. R. 177; *Peterson* v. *Sorensen,* 91 Utah 507, 65 P. 2d 12.

Edmond M. Morgan, in an article entitled "Some Observations Concerning Presumptions," 44 Harvard Law Review 906, says:

"Out of the welter of loose language and discordant decisions concerning presumptions may be drawn two deductions which can fairly be said to be generally accepted. First, however great the disparity of judicial definition of the word, courts and text writers agree that 'presumption' may properly be used to designate the assumption of the existence of one fact which the law *requires* the trier of the fact to make on account of the existence of another fact or group of facts standing alone. [See Thayer's Preliminary Treaties on Evidence (1898) 313-52; Bohlen, The Effect of Rebutable Presumptions of Law Upon the Burden of Proof (1920) 68 U. of Pa. L. Rev. 307; McCormick, Charges on Presumptions and Burden of Proof (1927) 5 N. C. L. Rev. 291; See also Wigmore on Evidence Sec. 2491] Second, such an assumption is thus compelled because it is believed to be justified on logical grounds by human experience or because it accomplishes a procedural convenience, or because it furthers a result deemed to be socially desirable, or because of a combination of two or more of these reasons. * * *" (Emphasis ours.) (See authorities above cited and *Van Ausdall* v. *Van Ausdall,* 1927, 48 R. I. 106, 110, 135 A. 850, 852).

The above definition of a "presumption" *requires* the trier of the fact, in the absence of evidence or other evidence on that question, to assume the existence of an ultimate fact from the establishment of another fact or group of facts. This definition not only permits but *requires* the trier of the fact to make the assumption of the ultimate fact where the basic facts are established in the absence of evidence or other evidence on the existence of the ultimate fact. A

rule of law which merely authorizes the trier of the fact to infer from one fact or set of facts the existence of another fact although often so called is not really a presumption. The term "in the absence of evidence or other evidence" is used because in many cases the facts on which the presumption is based have a logical tendency to prove the existence of the fact which is assumed therefrom, and are therefore evidence thereof and in such case the term "other evidence" applies. In other cases the basic facts have no such logical tendency and in such cases it requires "evidence" not "other evidence" to overcome the presumption. A true presumption is always rebuttable by sufficient evidence of the non-existence of the ultimate fact but in many cases it is said that there is an irrebuttable presumption. This means that what is said to be the basic facts are in reality the ultimate facts and they have the same effect as though what is said to be the ultimate facts did exist and that it is immaterial whether such facts actually exist or not. This is a rule of substantive law as to the effect of what is said to be the basic facts and not a presumption.

Courts have often said that upon the production of evidence on the existence of the ultimate fact the presumption disappears and has no further force or effect in the case. This is said to be true because a presumption is not evidence and cannot be weighed as such with other evidence. As will be later noted, a presumption is not evidence and cannot be weighed as such but it does not necessarily follow that it drops out of the case upon the production of some evidence as to the existence of the ultimate fact. Many presumptions do disappear upon the production of sufficient evidence from which the trier of the facts might reasonably believe that the ultimate fact which would otherwise be assumed does not exist. But other presumptions are overcome only by much stronger evidence. Some presumptions require that the trier of the facts be persuaded from the evidence that the fact which would otherwise be presumed does not exist, still others go farther and require that the

presumption shall be overcome only by clear and convincing evidence and in still others the presumption is only overcome by evidence which convinces the trier of the facts beyond a reasonable doubt that the otherwise presumed fact does not exist. See "Instructing the Jury on Presumptions and Burden of Proof" by Edmond M. Morgan, 47 Harvard Law Review 59-83, where eight different effects of presumptions are said to have some judicial sanction.

Mr. Justice Ephraim Hanson, dissenting in *Peterson* v. *Sorenson*, 91 Utah 507, 531, 65 P. 2d 12, 23, said:

"Presumptions of law are indulged independently and in the absence of evidence."

He was construing our Workmen's Compensation Act, which is now Section 42-1-54, U. C. A. 1943, which provides that an employer who fails to provide compensation for its employees who are accidentally injured in the course of such employment, shall be liable in a civil action for damages and that "proof of the injury shall constitute prima facie evidence of negligence on the part of the employer, and the burden shall be upon the employer to show freedom from negligence resulting in such injury." He argues that since a presumption cannot be weighed with evidence for or against the existence of the fact which would otherwise be presumed, but drops out and has no further force or effect in the case after the introduction of evidence on that question, that this statute which expressly places the burden of proving freedom from negligence upon the employer creates something more than a presumption and should not be thus limited in effect. The entire court assumed that such was the only possible effect of a presumption. To that effect Mr. Justice Hanson cited the following cases: *Ryan* v. *Union Pac. R. Co.*, 46 Utah 530, 151 P. 71; *Clark* v. *Los Angeles & S. L. R. Co.*, 73 Utah 486, 275 P. 582; *State* v. *Steadman*, 70 Utah 224, 259 P. 326; *State* v. *Green*, 78 Utah 580, 6 P. 2d 177; *In re Newell's Estate*, 78 Utah 463, 5 P. 2d 230.

From the foregoing Mr. Justice Hanson concludes that since this statute shifts the burden of proving negligence from the employee and places the burden of establishing freedom from negligence onto the employer, thereby providing that this statutory rule shall continue to wield an influence on the determination of the question of negligence after the introduction of evidence on that question, that the statute does not create a mere presumption but creates something more which is erroneously designated a presumption. The prevailing opinion seems to hold that this statute merely created a presumption, and since a presumption can only have effect in the absence of evidence, but cannot be weighed with evidence, that statute cannot have the effect of changing the burden of persuasion from the employee to the employer, but the presumption disappears from the case when evidence is introduced on the question of negligence.

The reasoning in both opinions in the *Peterson case* loses sight of the fact that not every presumption drops out and has no further effect after the introduction of evidence of the non-existence of the fact which would otherwise be presumed. The most commonly used presumption known to the law is that a person charged with a crime is presumed innocent until his guilt is established beyond a reasonable doubt. There the jury does not weigh that presumption against evidence but is nevertheless a real presumption of law. In the absence of evidence of defendant's guilt it requires an acquittal, but it does not disappear, however, upon the production of some evidence of guilt. It continues until overcome by evidence which removes from the jury's mind every reasonable doubt of guilt. This is clearly a presumption. It is a rule of law which requires the assumption of one fact (the innocence of the accused) from another fact (that the accused is a person) but this presumption does not drop out upon the production of evidence of defendant's guilt. Why should we not hold that the statute involved in the *Peterson case* created a presumption which can be overcome only by evidence which convinces the trier of the facts

that the preponderance of probability is that the employer is free from negligence? This seems to be what the statute requires, and is in harmony with many other cases involving a presumption.

In *Buhler* v. *Maddison,* 109 Utah 267, 167 P. 2d 118, 168 A. L. R. 177, we placed that construction on a Nevada statute which is similar to ours but seem to have held that had we been construing our own statute under our laws we would have had to hold that the presumption dropped out upon the production of some evidence on the question of negligence.

This court, contrary to the *Peterson case,* has many times held some presumptions do not disappear from the case merely upon the production of some evidence. In some instances we have held that the presumption places the burden of persuasion on the party who claims the facts are contrary to the presumption. Thus in *Walton* v. *Coffman,* 110 Utah 1, 169 P. 2d 97; *Baldwin* v. *Nielson,* 110 Utah 172, 170 P. 2d 179; *Bradley* v. *Miller,* 109 Utah 538, 550, 167 P. 2d 978, which were child custody cases, we held that there is a presumption that it will be for the best interest of the child to be reared in the custody of its natural parents and that such presumption is not overcome until the trier of the facts is convinced by the evidence to the contrary. In *State* v. *Steadman,* supra, [70 Utah 224, 259 P. 329], which was a bastardy case, we held

"that the defendant was presumed to be innocent of having sexual intercourse with the prosecutrix until a fair preponderance or greater weight of the evidence convinced them [the jury] that he was guilty of such offense."

*State* v. *Green* was a murder case in which the defendant raised the issue of insanity. We held that there is a presumption of sanity until some evidence of insanity is introduced, whereupon the issue must be submitted to the jury with instructions that it must be determined from the evidence and not from the presumption and if the jury from the evidence has a reasonable doubt of his sanity they must acquit the accused. Here all that is required to overcome the

presumption is sufficient evidence to raise a reasonable doubt of defendant's sanity. In the opinion we definitely recognized that [78 Utah 580, 6 P. 2d 183]:

"Various degrees of proof are required to overthrow the various so-called disputable presumptions."

*In re Newell's Estate,* 78 Utah 463, 492, 5 P. 2d 230, 241; was a will contest in which we held that upon it being established that the contestant was an inheritable heir who was omitted from the will and no provision made for him a presumption arose that the omission was not intentional and

"the burden of proof [persuasion] was cast on the defendants to establish the fact that the omission was intentional."

Thus one of the cases cited by Mr. Justice Ephraim Hanson recognized that various degrees of proof are required to overthrow the various presumptions. Two others held that the burden of persuading the trier of the facts is on the person who claims the fact to be contrary to the presumption. *Chamberlain* v. *Larsen,* 83 Utah 420, 29 P. 2d 355, 363, involved a presumption of delivery of a deed from the fact that the deed was recorded and in possession of the grantee. Mr. Justice Ephraim Hanson writing the opinion of the court held that a presumption

"is a rule of law casting the burden of proof on him against whom the presumption operates."

He concluded that in that case it required clear and convincing evidence to justify the court to make findings contrary to the presumption. He justifies that result on the ground that the facts upon which the presumption is based are entitled to great weight and seems to assume that it necessarily follows therefrom that clear and convincing evidence is required to overthrow the presumption. However, that does not necessarily follow because the facts on which the presumption is based are in evidence and should be weighed and considered with other evidence for whatever they are worth by the trier of the facts regardless of the degree of evidence which the law requires to overcome the

presumption. Presumptions often disregard entirely the inherent evidentiary value, if any, of the facts upon which they are based and exist in spite of the fact that such facts have no evidentiary value to prove the existence of the assumed fact and yet the courts require clear and convincing evidence, or place the burden of persuasion on the party who claims that the assumed fact does not exist. Thus it is the rule of law which creates the presumption which determines the degree of evidence necessary to overthrow it, and that is not necessarily determined by the weight as evidence, if any to be given the facts on which the presumption is based.

In criminal cases under statutory and common law rules it is often held that a fact or set of facts are prima facie evidence of another fact which constitutes a necessary element of defendant's guilt. This under the above definition is not a presumption because it does not require the trier of the facts to assume the ultimate fact from the existence of the basic fact, but only provides that such may be inferred. In such cases the trier of the facts merely uses the basic facts for what they are worth as evidence of the ultimate fact, but the rule of law requires that the case be submitted to the jury in the absence of conclusive evidence to the contrary. See State v. Barretta, 47 Utah 479, 155 P. 343; State v. Sawyer, 54 Utah 275, 182 P. 206; State v. Mellor, 73 Utah 104, 272 P. 635; State v. Donovan, 77 Utah 343, 294 P. 1108; State v. Bruno, 97 Utah 33, 93, P. 2d 1103; State v. Hall, 105 Utah 162, 145 P. 2d 494; State v. Prettyman, 113 Utah 36, 191 P. 2d 142.

Under these statutes the courts have sometimes erroneously referred to them as presumptions. Under the above definition they are presumptions only where they require the trier of the facts to presume the existence of one fact from the existence of another fact or set of facts. Sometimes the fact or set of facts on which the assumption is based require no express proof of their existence but are assumed merely as an incidental to the main case, such as the fact that the

defendant is a person, and in other cases the court may judicially know the facts on which the presumption is based. Nevertheless in all cases involving a presumption the law requires the trier of the facts to assume from one fact or set of facts the existence of another.

This court is committed to the doctrine that different presumptions are overcome by varying degrees of proof. In some cases, as soon as there is sufficient evidence on the question of the ultimate fact to justify the trier of the facts in determining the ultimate fact therefrom, the presumption disappears and has no further force or effect in the case. In other cases it has the effect of shifting the burden of persuading the trier of the fact, and in still others it requires the trier of the facts to presume the ultimate fact until clear and convincing evidence is produced to the contrary or until satisfied to the contrary beyond a reasonable doubt. But in none of these cases does the trier of the facts weigh the presumption against the direct evidence. A presumption is a rule of law which determines the effect of the evidence of one fact or set of facts in determining whether another fact exists. Such a rule of law cannot logically have any effect in persuading or convincing the mind of the trier of the facts that the facts are one way or the other but it can and does determine for the trier of the fact the degree or extent of persuasion required before such ultimate fact may be found contrary to the presumption.

A presumption is not the fact on which it is based, nor the inference to be drawn therefrom, but is the legal consequence thereof. Since it has no power of persuading or convincing the mind of the probability of the existence of a fact it cannot be weighed on the scales of justice in determining what the facts are. So when the evidence is sufficient to overcome its legal effects it drops out of the case and has no further force or effect. This is true in a criminal case where the defendant is presumed innocent until the jury is convinced of his guilt beyond a reasonable doubt as well as in the case where all that is necessary is to produce sufficient

evidence from which the jury could find the ultimate fact. See Edmund M. Morgan's two articles above quoted: Wigmore on Evidence, Section 2491; *State* v. *Green,* supra; my concurring opinion in *State* v. *Prettyman,* supra. Still the fact or facts upon which the presumption is based may and usually do have some logical tendency as circumstantial evidence to prove the presumed fact. The facts on which the presumption is based must be in evidence or judicially known before the presumption can come into existence. Such facts remain in evidence after the presumption has ceased to function. And even though the presumption ceases to function as such the facts on which it is based are still in evidence before the trier of the facts and may be considered with the other evidence in determining what are the facts. See *Chamberlain* v. *Larsen,* supra; *Walton* v. *Coffman,* supra; *Baldwin* v. *Nielson,* supra; *Bradley* v. *Miller,* supra, and authorities cited above in this paragraph.

In Edmond M. Morgan's article "Some Observations Concerning Presumptions," 44 Harvard Law Review, pages 931-32, he concludes that

"presumptions should be classified according to the reasons which justify their creation and existence,"

and that their effect in the case should be determined from those reasons. He mentions four classes of presumptions, each with a different reason for its existence. The third class he describes as

"Those [presumptions] created to further a result judicially deemed socially desirable."

Among such presumptions he lists

"the presumption of the validity of a ceremonial marriage and the presumption of the legitimacy of a child born in wedlock"

and says that they

"are demanded by the observed results of human experience and the accepted current convictions of social policy. Both usually fix the burden of persuasion, and * * * [are] required to be overcome by more than a preponderance of the evidence."

As stated in that article, the reason for the presumption in the present case is to further a result judicially deemed socially desirable. In other words, it is judicially deemed sociably desirable that where a marriage ceremony consummated by cohabitation is shown, an innocent person shall not be branded as having lived in unlawful cohabitation or innocent children be branded as illegitimate, even though if the truth were proved, such would be the case. To avoid such hardships on innocent persons the courts have erected a barrier against such results by creating a presumption in favor of a lawful marriage which presumption is not overcome by satisfying the ordinary burden of persuasion. Such a presumption persists until it is overcome by clear, convincing and *conclusive* evidence. See authorities quoted in the main opinion. I agree that such is the correct policy of the law.