262 P.2d 285

**MECHAM et al. v. ALLEN et al.**

No. 7865.

Supreme Court of Utah.

Oct. 8, 1953.

Fabian, Clendenin, Moffat and Mabey, Peter W. Billings, Albert J. Colton, Salt Lake City, for appellants.

R. Verne McCullough, Alma II. Boyce, Leland S. McCullough, Salt Lake City, for respondent.

WADE, Justice.

Defendants Arthur R. and J. H. Allen appeal from a judgment on a jury verdict awarding damages against them for the death of Thomas Udell Mecham, and injuries to his wife Flora S. Mecham, plaintiff and respondent here, and their three minor children. The injuries resulted from a collision between a Chevrolet car, driven by the decedent in which plaintiff and their children were riding, and a large tractor-trailer equipped for hauling livestock, driven by Arthur R. Allen as employee of the other defendant, J. H. Allen, his father, accompanied by Dale Mousley, a substitute driver. The collision occurred on July 4, 1950 about noon on the Provo Canyon road below Bridal Veil Falls, where there is a curve to the left for down canyon traffic. There were two lanes in the hard surface of the road, with a double line painted in the center. On each side of the hard surface was a gravel shoulder and the Provo River runs down the canyon southeast of the road. The Mecham car was traveling up the canyon toward the northeast and the tractor-trailer coming down in the opposite direction. The traffic was unusually heavy, it being a holiday and shortly after

the Independence Day parade in Provo. The left side of the front of the car ran into the left side of the tractor-trailer, killing Mecham and injuring the others in his family.

Appellants contend (1) that the evidence does not reasonably support the verdict, (2) that the court erred in instructing the jury as to a presumption that decedent used due care, and (3) that defendants were entitled to a new trial because plaintiff produced a surprise witness after both parties had rested, whose evidence they had no reasonable opportunity to rebut.

The evidence reasonably sustains the verdict. This was not a head-on collision—the front of the car missed the front of the tractor–trailer, slightly scratching its left front fender and ran into its side just behind the driver's cab. The springs, drive-shaft and wheels of the trailer were torn loose, twisted out of alignment and broken, and the bed was resting on the top of the wheels. The left side and front of the car were crushed, broken and demolished, the left front wheel was deflated and the tire torn from the rim which was twisted and bent. When the officers arrived the car was standing on the south half of and at right angles with the road, with the front end near the center of the road and the hind wheels resting on the shoulder beyond the pavement. The tractor-trailer was about 50 feet down the canyon from the car, and except for the left front wheel, which was turned onto the pavement, was on the right hand shoulder facing down the canyon, parallel with the road. Plaintiff produced two witnesses who testified that the vehicles came to rest on the pavement after the accident with the front end of the car partly under the bed and against the side of the trailer, and that the tractor-trailer was moved to the other position later. Defendants' evidence shows that even the wrecker could not move the tractor-trailer except to pull the one wheel off the pavement when it first came onto the scene.

Which side of the center line of the road were the vehicles when the impact occurred is the determinative issue in this case. If a finding that the impact occurred on plaintiff's right hand side of the road would be reasonable, in view of all the evidence, then their verdict was supported by the evidence,[1] for if the tractor-trailer was on the wrong side of the road at the time of the impact it is clear that the jury could reasonably find defendants guilty of negligence which proximately caused the injuries, and that decedent was free from contributory negligence. Defendants contend that all the reliable testimony shows that the impact was on their side of the road and that this is conclusively corroborated by the tire marks and tracks left on the hard surface and shoulder.

1. See Horsley v. Robinson, 112 Utah 227, 186 P.2d 592; also my dissenting opinion in Henrie v. Rocky Mountain Packing Corp., 113 Utah 415, 196 P.2d 487 at page 496.

The courses of the two vehicles were not parallel with each other. Either the car was turned toward the tractor-trailer or the tractor-trailer was turned away from the car at the time of the impact; otherwise there would have been a head-on collision, or no collision at all. A Mr. Ercanbrack testified that he was following the Mecham car up the canyon with only two cars between them when he saw the tractor-trailer approaching from the opposite direction on its left hand side of the road evidently trying to pass an old car coming down the canyon ahead of it, that it then turned sharply toward its right-hand side of the road behind the old car and immediately thereafter the Mecham car crashed into its side before it could get back onto its side of the road, and that at the time of the crash all of the rear end of the trailer and about two-thirds of the front end of the tractor was on the wrong side of the road. Plaintiff's testimony is in harmony with this version, for though she did not mention that the tractor-trailer was trying to pass a car ahead of it, she said as she looked up she saw the tractor-trailer coming fast on the wrong side of the road swaying so that she could not see all of it when the crash occurred. On the other hand, defendant Arthur R. Allen testified that he saw the Mecham car approaching about 150 feet away with each vehicle on its right-hand side of the road but as they were about to pass, the Mecham car turned suddenly head-on toward the tractor-trailer, and immediately he turned sharply toward the side of the road and the car ran into the side of the tractor-trailer. Dale Mousley, who was riding with Allen, testified that just before the crash Allen shouted "look out" and looking down he saw the top of the Mecham car go past when the crash occurred and the tractor-trailer was turned clear off the pavement.

Each of these versions account for the front of the car striking the side of the tractor-trailer but one phase of defendants' version seems inherently improbable. In the absence of a showing of a road defect or mechanical failure, it seems incredible that a person under these conditions would suddenly turn sharply into the course of a stream of traffic, and especially into the course of this large tractor-trailer. Certainly he would not do so intentionally, and it seems improbable that such a sharp sudden turn would be made through inattention or automatic reaction.

Two witnesses for plaintiff testified that they saw dual tire marks on defendants' wrong side of the road while at the scene of the accident before the vehicles had been removed. One was Mr. Mecham, father of decedent, who arrived at the scene within a few minutes after the crash. He testified that in trying to locate one of the children he came upon these tracks which were at least two feet over onto plaintiff's side of the road. On cross examination he admitted that he probably testified in his deposition that he saw no tire marks on the road, but explained that if he did so testify he

was referring only to the road below his son's car. The other witness, Mr. Paey, a pipeline walker, testified that he heard the crash and visited the scene from 15 to 20 minutes later where he observed about the same kind of dual tire marks in about the same place as Mr. Mecham testified except that he did not put them quite as far over on the wrong side of the road. He said that he observed these marks for several days later. He was a stranger to the Mechams and had no interest in the case.

Mr. Ercanbrack, whose testimony we have already noted, testified that the vehicles came to rest with the front of the car partially under the bed of the tractor-trailer, and that they were moved apart by the crowd which gathered with the help of the driver of the truck operating the tractor engine. Mr. Carter, the surprise witness who testified on rebuttal, also confirmed this version. He also testified that when the vehicles came to rest the rear end of the trailer was on its wrong side of the road; he fixes the scene of the accident farther up the canyon than the other witnesses.

Defendants make a strong case that the vehicles could not have been moved without a wrecker after the crash and if that were a determining factor there would be much force to this contention. This is not a determining factor in the case, for whether the vehicles came to rest touching each other is not controlling on where the impact occurred. However, if these witnesses were wrong on this they are more apt to be wrong on other parts of their testimony, and Carter's testimony that the rear end of the trailer came to rest on the wrong side of the center line would be impossible. Though these witnesses may have been mistaken on this point, that does not prove that they were dishonest or were incorrect on the other points of their testimony.

Clearly defendants made a prima facie case that decedent's car was on the wrong side of the road at the time of the impact. We are impressed that they made a strong case to that effect but not strong enough so that it would be unreasonable, in view of all the evidence, to find that fact against them. Two witnesses testified positively that they saw the crash and that it occurred on plaintiff's side of the road, two other witnesses testified that they saw tire marks in the pavement which were evidently made by the dual wheels of the tractor on its wrong side of the road, plaintiff's version of the events immediately before the accident seem more probable than defendants'. In view of this testimony, even after discounting some of plaintiff's witnesses' testimony for probable inaccuracies, a finding that the impact occurred on plaintiff's side of the road is not unreasonable.

The court erred in giving instruction No. 11 set out below, on the presumption that deceased used due care for his own safety.

"You are instructed that, until the contrary is proven, there is a presumption that the deceased, Thomas Udell Mecham, was exercising due and prop-

er care for the protection of his person and the preservation of his life, at the time of the accident; this presumption arises from the instinct of self preservation and the disposition of man to avoid personal harm. This presumption is not conclusive, but is a matter to be considered by the jury in connection with all other facts and circumstances in the case in determining whether or not the deceased, Thomas Udell Mecham, was guilty of contributory negligence at the time of the accident."

A presumption deals with a rule of law which requires the trier of the facts to assume the existence of one fact or set of facts (herein called the presumed facts) from the establishment of another fact or set of facts (herein called the basic facts). Unless the basic facts are conclusively shown to exist that question, if material, should be submitted to the jury. The existence of the basic facts may or may not have a logical tendency to prove the presumed facts, also they may have some such logical tendency but be insufficient standing alone to justify an inference on that question. From the basic fact that a human being was accidentally killed a presumption arises which requires the trier of the facts to assume the presumed facts, that decedent used due care for his own safety, in the absence of a prima facie showing to the contrary, but in this kind of a presumption upon the making of such showing, the presumption disappears from and becomes wholly inoperative in the case, and the trial from then on should proceed exactly the same as though no presumption ever existed, or had any effect on the case.[2]

Such a presumption deals only with the burden of going forward with or the production of evidence. The question of whether a prima facie case has been made is the same here as in all other cases a question for the court and not for the jury to determine. It is established whenever sufficient evidence is produced from which its existence could be reasonably found. Of course it is immaterial which party produces such evidence. If the court concludes that a prima facie case has been made it should submit the question of the existence of the presumed facts to the jury on the evidence without commenting on or mentioning to them that there was or is such a presumption. If the court concludes that no prima facie showing of the non-existence of the presumed facts has been made he should direct the jury to assume the existence of the presumed facts, or if

2. Tuttle v. Intermountain Express Co., Utah, 242 P.2d 764, and authorities therein cited, and my concurring opinion in Gibbs v. Blue Cab, Utah, 249 P.2d 213 at page 217 and the authorities therein cited. Also the American Law Institute's Model Code of Evidence, Foreward on Presumptions by Edmund M. Morgan, also same work Chapter 8 Presumptions, comment by Edmund M. Morgan, and Rules 701 to 704.

such facts are determinative of the whole case he should direct a verdict in accordance therewith.[3] Such is the effect of this kind of a presumption, but there are other so-called presumptions, which require more than a prima facie case to make them ineffective. Some place the burden of proof, or persuasion on the party claiming the nonexistence of the presumed facts, others require clear and convincing evidence to overcome such presumption and still others require proof beyond a reasonable doubt before the trier of the facts may find that the presumed facts do not exist.[4] In such cases the court in the first instance would have to determine that there is sufficient evidence to support the finding, and leave it to the jury to decide whether the evidence has the required persuasive force.

■ Although the presumption disappears upon the production of the required evidence, the basic facts are a part of the evidence in the case. If such facts in the light of human experience have any tendency to prove the presumed facts such tendency may be considered and weighed along with the other evidence in the case in determining that question. Here the basic fact that a human being is accidentally

3. See Authorities cited in Note 2 above, also Wigmore on Evidence, 3rd Ed., Section 2492 where in commenting on what is required to make a prima facie case it is said: "[The proposition] cannot merely be, Is there evidence? * * * The proposition seems to me to be this: Are there facts in evidence which if unanswered would justify men · of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?" See also In re Newell's Estate, 78 Utah 463, 5 P.2d 230, 238, where we quoted from Peters v. Lohr, 24 S.D. 605, 124 N.W. 853, 855, as follows: "A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until prima facie evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence.

The presumption, when the opposite party has produced prima facie evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponent's prima facie evidence with evidence, and not presumptions. A presumption is not evidence of a fact, but purely a conclusion." And in commenting thereon we said: "The presumption ceased to exist when sufficient evidence was adduced to justify or warrant a finding that the omission was intentional. In other words, when the duty arose requiring the defendants to go forward with evidence, all they were required to do to overcome the presumption, or more properly speaking to cause the nonexistence of the presumption, was to prove facts and circumstances concerning which the presumption was indulged and which justified or tended to justify a finding contrary to the presumption."

4. See my concurring opinion in Re Pilcher's Estate, 114 Utah 72, 197 P.2d 143.

killed, in the light of human experience that people generally exercise some care for their own safety, may have some logical tendency to prove that decedent did what the normal person does, exercised some care for his own safety. This tendency may not be strong proof. Where one or the other of two persons involved in the accident must have been guilty of negligence, this evidence alone would be as strong for one as the other and so would not aid in determining which one was guilty. But in cases where the accident could have happened without negligence on the part of either or both of the parties or where the fact that one party was negligent has no tendency to prove that the other one was not, such tendency would not be nullified. But in any event the basic facts are a part of the evidence in the case and the jury was at liberty to consider them for whatever they were worth the same as though no presumption had ever existed in the case. That such logical tendency if any is probative evidence and no part of the presumption is elementary and must be kept in mind to avoid confusion in thinking that the presumption, and not the basic facts, can be weighed with the other evidence for what it is worth. Although such evidence may be overcome by more persuasive evidence it never ceases to be evidence in the case which the jury may consider in reaching its conclusion.[5] Of course this does not mean that the jury should be so instructed.

Since defendants' evidence was clearly sufficient to make a prima facie case, that decedent was guilty of contributory negligence which proximately caused the accident, the presumption was eliminated from the case and it was error for the court to instruct the jury on that question. But was it prejudicial? With the presumption eliminated the defendant still had the burden of persuading the jury that decedent was guilty of contributory negligence which approximately cause the accident. The jury was elsewhere so instructed. Thus defendant not only had the burden of going forward with the evidence but of persuading the jury on that issue. So in cases where the question of proving contributory negligence is involved this presumption can never be of any aid to the representatives of the deceased, because their opponent without the presumption has the burden of persuading the jury that he was guilty of such negligence which is a greater burden than and includes the burden of going forward with the evidence.[6]

5. At page 226, in his comment on presumptions in Chapter 8 of the American Law Institute's Model Code of Evidence, Edmond M. Morgan says: " * * * Upon one point only they (the authorities) are in complete accord, namely, that when once the basic fact is established in an action it continues to have throughout the action at least that probative value which it would have had, had no presumption ever become operative in the action. * * * "

6. See authorities cited in above notes.

If the instruction on the presumption accurately stated the law and the jury correctly understood it there could be no prejudice. But here there were a number of incorrect statements of the law on presumptions and so we must analyze them to determine whether defendants were prejudiced thereby.

The instruction states that "until the contrary is proven" there is a presumption that deceased used due care for his own safety. This suggests that the presumption is operative and has some effect until the jury finds that the contrary has been proven. This is contrary to law, for it is always a question for the court and not the jury to determine whether the burden of going forward with the evidence by establishing a prima facie case has been satisfied. Defendants argue that this placed on them the burden of persuading (proving by a preponderance of the evidence) that deceased was negligent which proximately caused the accident. The jury might well have so understood that part of the instruction. But this could not have prejudiced the defendant for although the presumption does not place that burden on the defendants they do have the burden of proving that decedent was guilty of contributory negligence which proximately caused the accident. The law places that burden on defendants and the jury was correctly elsewhere so instructed. So although the statement was incorrect it merely placed the burden where it rightfully belonged and so no prejudice could result therefrom.

The instruction further stated that "this presumption arises from the instinct of self preservation and the disposition of man to avoid personal harm." This points out the logical tendency if any of the basic facts, in the light of human experience, to prove the presumed facts. This tendency should not be confused with the presumption, for although they come from the same evidence, one is a rule of law which fixes the burden of going forward with the evidence and has no tendency to prove the fact in question, and so cannot be weighed with other evidence, the other is an evidentiary fact which may have some tendency to prove the issue, it is probative evidence which can be weighed for what it is worth with all other evidence on that subject. This evidence does not disappear with the presumption.

The instruction then says that: "this presumption is not conclusive but is a matter to be considered" with all other facts and circumstances in the case in determining whether deceased was negligent. This is an erroneous statement of the effect of a presumption for a presumption which deals only with the burden of going forward with the evidence as long as it is effective in the case is conclusive. This does not mean that it is irrebuttable for it is completely rebutted and disappears from the case upon the production of prima facie evidence to the contrary. It is for the court to determine whether a prima facie case has been made, not for the jury to con-

sider and weigh the presumption along with other evidence. This is not a description of a presumption but of evidence. It suggests that the presumption is capable of being weighed on the mental scales, a concept which is erroneous in law and impossible in fact. But the basic facts which give rise to the presumption are in evidence, and are not stricken from the evidence when the presumption disappears. This part of the instruction suggests that such facts in the light of human experience has some evidentiary value which the jury could consider with all other facts and circumstances in the case in determining whether deceased was negligent. If the basic facts have such evidentiary value this suggestion is correct. If so considered this instruction in substance says that the presumption arises from the instinct of self-preservation and the disposition of man to avoid harm, which instinct and disposition may be taken into consideration with all other facts and circumstances in the case in determining that issue. That is no doubt what the court meant to instruct the jury and the jury probably so construed it. If the jury thus construed the instruction and followed it they did what the law authorizes them to do for they had a right to consider man's instinct and disposition for self preservation for what it is worth in determining whether decedent was guilty of contributory negligence, and defendants were not prejudiced thereby. Of course it is not proper for the court to instruct on and explain the evidentiary value of some of the facts to the exclusion of others unless there is a situation which is apt to be misunderstood, for such a procedure has a tendency to over-emphasize such evidence, and is commenting on the evidence by the court.

Defendants were not entitled to a new trial on account of the surprise witness Mr. Carter, although it is clear that they failed to discover this witness before the trial after exhausting all possible means to learn of him and they produced some evidence which suggests, though not strongly, that the surprise was planned. His testimony was received without objection and the things he testified to was not new to defendants. The part which they claimed they could have rebutted had they known of his testimony sooner, that the vehicles came to rest together and were moved apart soon thereafter, was the most contested issue in the case. Such claim is not decisive of the case and the rebuttal would have been cumulative evidence added to a long line of strong proof. Whether a new trial should have been granted was a matter within the discretion of the trial court who was in a better position than we are to evaluate this evidence, determine its effect and whether it was a planned surprise. We agree with his decision and feel sure that there was no abuse of his discretion.

Affirmed. Costs to respondent.

McDONOUGH, Justice.

I concur. While the giving of Instruction No. 11 was clearly erroneous the oth-

er instructions dealt with such specificity as to the duty of the driver of each vehicle under the adversary theory of the facts, and so clearly defined the burden of proof resting upon each party, as to make it highly improbable that the questioned instruction influenced the jury's verdict.

CROCKETT, Justice.

I concur in affirming the judgment:

There is substantial competent evidence that the defendant in driving his truck westerly down the canyon went over on to its left (south) side of the road and was therefore negligent, proximately causing the collision; and that deceased in driving easterly up the canyon kept his car on his right (south) side of the road and was therefore non-negligent.

Because of the fact that there was evidence introduced both on behalf of the plaintiff and the defendant as to what deceased's manner of driving was, it may have been unnecessary and therefore improper to give instruction No. 11, set out in the main opinion, as to the presumption of due care. Nevertheless, the instruction was but an application of the elementary rule that the burden of proof of deceased's contributory negligence was on the defendant. Everyone is presumed to use due care; there is no presumption of negligence. It must be proved. It seems to me that the instruction in question simply told the jury that Mr. Mecham was presumed to be ex- ercising due care, "until the contrary is proven." [1] By other instructions the jury was correctly advised that the defendant had the burden of proving deceased's contributory negligence by a preponderance of the evidence which term was also properly defined. Accordingly, I agree that the giving of the instruction, even though it may have been unnecessary, did not place any improper burden upon defendant and therefore was not prejudicial error.

HENRIOD, Justice.

I concur in the result.

WOLFE, Chief Justice (dissenting).

I think the jury could reasonably have found as it did on the evidence adduced in the case without the court giving instruction No. 11 or any other instruction respecting the presumption of the exercise of due care by the decedent which it is claimed arises by virtue of the instinct of self-preservation. I am of the opinion that this presumption has little or no use in automobile accident cases, especially in those involving collisions between two or more automobiles. I think a fair study of cases dealing with collisions would reveal that in the very great majority, if not in practically all cases, no device is needed to get them off dead center and that there is no necessity for the use of the presumption of the exercise of due care by persons killed. This is true whether the plaintiff claims

---

1. A preferable phrase would be "in the absence of evidence to the contrary." See BAJI, 143. Also Supl. and Notes.

that the defendant was negligent or the defendant claims that the plaintiff was guilty of contributory negligence or both. The presence of the presumption has brought confusion and has apparently led trial courts needlessly into error in their instructions.

What Mr. Justice Wade is discussing in his treatment of the due care presumption is in reality, in great part at least, only a means of advancing the trial. I agree with his statement that "such a presumption deals only with the burden of going forward with or the production of evidence." The upshot of my thesis is that we seldom need such devices. There are some rare cases where there are no competent witnesses to testify to the nature or cause of the accident or the manner in which it happened. In those cases a rule of procedural law is needed in order to determine liability. For instance, suppose the insured under an accidental death insurance policy which excludes designed death dies from a fall out of a window. No one is available who can testify how or why the deceased fell; no one knows whether it was suicidal or accidental. There is no evidence regarding despondency or expression of suicidal intent or of deep emotional disturbance such as comes from marital or business upsets. In such case liability may depend upon who has the burden of proof. He may lose who cannot proceed. The presumption of due care may aid the beneficiary because the insurer cannot show that the insured did not exercise due care, and self-destruction is not presumed.

This is the third case in recent months to come before this court on the matter of the office and nature of the due care presumption and the extent of its reach.[1] We have been divided on the question whether the presumption becomes non-existent on the presentation of any evidence or only when the court concludes there was *sufficient* evidence to overcome it. I have contended for the idea that the presumption evaporates when there is *some* or *any* evidence presented of negligence on the part of the deceased person who is presumed to have used due care. There usually is such evidence. Under my theory the court would determine whether *any* or *some* such evidence is presented. I think Mr. Justice Wade is of the view that the presumption disappears only when a prima facie case of negligence on the part of the person who is presumed to have used due care which contributes to the accident has been presented by the other party. But I think he is giving the presumption too great vitality. It is based on the idea that the instinct of self-preservation will cause persons to be careful of their lives and limbs, which idea could be made to support a presumption of due care in every accident case because if instinctive regard for one's life and safety

1. See Tuttle v. Pacific Intermountain Exp. Co., Utah, 242 P.2d 764; Gibbs v. Blue Cab Co., Utah, 249 P.2d 213.

caused one to be careful, he would be continuously careful of his person. As a matter of fact, people are also very careless and I do not think that the so-called instinct of self-preservation should be given much vitality. It should not be used except as a procedural device to further the trial of the case. It would employ it only for such purposes. And that I think would be in very few cases. Mr. Justice Wade seems at times to mean just that but at other times he seems to be giving the presumption a substantive quality. But as he has announced, the presumption deals with a rule of law. It is a procedural device and nothing more. It disappears when any evidence contrary to the presumption enters the case regardless of the quantum or sufficiency of that evidence. Mr. Justice Wade says: "From the basic fact that a human being was accidentally killed a presumption arises which requires the trier of the facts [1] to assume the presumed facts, that decedent used due care for his own safety, in the absence of a prima facie showing to the contrary, but in this kind of a presumption [2] upon the making of such showing [prima facie showing], the presumption disappears from and becomes wholly inoperative in the case, and the trial from then on should proceed exactly the same as though no such presumption ever existed, or had any effect on the case."

I think the narrow point on which we differ, as I said before, is whether any or some evidence of negligence on the part of the deceased will make the prima facie showing or whether the judge must determine whether the evidence of negligence is "sufficient." While this may seem to be a very narrow difference and an unimportant one, it could in rare cases be very important. But since the upshot of my conclusion is that in the very great majority of accident cases and especially automobile accident cases the course of the trial rolls along without the need of any procedural device to keep it going, I think for practical reasons it is unwise to introduce in reference to the presumption occasion for nicety of appraising evidence. In most cases no instruction concerning this frail "due care" presumption would be necessary. Consequently, I think it unnecessary and unprofitable to determine whether the burden of establishing the non-existence of the presumption is to be met by "some" or "sufficient" evidence.

Turning now to another part of the majority opinion, I am in accord with the statement therein that the presumption is not evidence, but the statement of a rule of law. But I cannot agree with the following excerpt:

"The instruction further stated that 'this presumption arises from the instinct of self preservation and the disposition of man to avoid personal harm.' *This points out the logical tendency * * * of the basic facts, in the light of human experience, to prove the presumed facts.* This tend-

ency should not be confused with the presumption, for although they come from the same evidence, one is a rule of law which fixes the burden of going forward with the evidence and has no tendency to prove the fact in question, and so cannot be weighed with other evidence, the other is an evidentiary fact which may have some tendency to prove the issue, it is probative evidence which can be weighed for what it is worth with all other evidence on that subject. This evidence does not disappear with the presumption." (Emphasis mine.)

The basic error of Mr. Justice Wade's position is revealed by the italicized portion of his comments above noted. I do not think the "instinct of self preservation and the disposition of man to avoid personal harm" point out the logical tendency of the basic fact in the light of human experience, to prove the "presumed facts." The opinion has just said that "such a presumption deals only with the burden of going forward with or the production of evidence" and that "from the basic fact that a human being was accidentally killed *a presumption arises which requires the trier of the facts to assume the presumed facts, that decedent used due care for his own safety, in absence of a prima facie showing to the contrary,* but in this kind of a presumption upon the making of such showing, the presumption disappears and becomes wholly inoperative in the case, and the trial from then on should proceed exactly the same as though no presumption ever existed, *or had any effect on the case."* (Emphasis mine.) But if the presumption is ruled out of the case except for the purpose of advancing the trial only, how does it get in by masquerading as an inference? The subject is abstruse. I realize it is permissible for the jury to consider any inferences which flow from the manner in which the accident occurred which may throw any light on whether it was caused by the defendant's negligence or by the concurring negligence of the defendant and the decedent. But is not the real difficulty that we use the very general rule that men instinctively tend to protect their person from harm as evidence "for what it is worth" and thus make it the basis for an inference and permit it to come in as such after we have excluded it as a presumption. This seems to be a legerdemain of words to accomplish what we said could not be done under name of a presumption. I think it is only confusing to say that the presumption of due care in case of accidental death exists only by virtue of a rule of law, whilst an inference is actually derived from the evidence, that is from the facts, especially in view of the real truths that what is called evidence is nothing but a broad truism. Herein we get close to the fallacy that the presumption rests on exactly the same base as the inference, viz. the broad general theory that man acts instinctively to save himself from harm. It is fallacious because inferences should be derived from the evidence in the

particular case and not from some broad general principle which may or may not be true in the particular case under inquiry. In each individual case it is for the jury to determine under the particular facts of the case under inquiry whether the plaintiff or defendant was negligent.

I do not think it correct to infer anything from the principle that men act in accordance with measures to protect themselves from harm when that is certainly not always the case and when the true inquiry is, how did the participants in *this* accident act? Mr. Justice Wade is to my mind incorrect in stating that the fact of death by accident may give rise to an inference that it was caused by negligence because men have the urge to save themselves from harm. It would indeed be very weak and farfetched and I think involve a complete nonsequitur to argue that negligence could be ascribed to the defendant because of the supposed universal principle (which is anything but universal) that men act to avoid harm to themselves. The inquiry is whether in this case the evidence reveals that decedent was negligent and therefore did not act. One cannot take as evidence the general disposition of men to save themselves from harm to infer that the decedent was free from negligence, even though such inference may be said to be very weak, any more than in a larceny case, the accused's innocence could be inferred because of the truism that there are more honest men than dishonest men. Of course, neither negligence nor criminal guilt is presumed. It must be proved by the party alleging it. But from the mere fact of accidental death, there can be no *inference* that the deceased was not negligent. From the fact that a person is killed accidentally, a jury can no more logically infer that the deceased was free from negligence than it can infer that other actors in the accident who were not killed were not negligent. If the jury infers that the deceased used due care because men usually act to protect themselves, they should by the same token infer that the actors who survived the accident were not negligent.

It may be true in certain cases as stated by Edmond M. Morgan in his comment on presumptions in Chapter 8 of the American Law Institute's Model Code of Evidence, page 226, referred to in footnote 5 of the opinion of Mr. Justice Wade, "that when once the basic fact is established in an action it continues to have throughout the action at least that probative value which it would have had, had no presumption ever become operative in the action * * *." Such statement is true when there is some logical connection between the basic fact and the inference sought to be drawn, e. g. the presumption that a person is dead who is not heard from for seven continuous years by those who would normally hear from him. Even though the trial court ruled that the presumption had become dissipated, the jury could logically draw an inference from the fact that a person had not

been heard from for seven years by those who would normally hear from him, that he was dead. There is some logical connection between the fact and the inference drawn. But the fact that a person is accidentally killed is not probative on the question of whether that person was exercising due care at the time of his death. There is no logical connection between the fact and the inference sought to be drawn.

Whether instruction No. 11, although erroneous, prejudiced the defendants depends upon what meaning the jury gave that instruction. The accident occurred because one of the vehicles was on the wrong side of the highway. If from the instruction that the deceased is presumed to have used due care, until the contrary is proven, the jury presumed that the deceased was on his own side of the highway and that therefore the defendants must have been on the wrong side, it requires no argument to demonstrate that prejudice resulted. Under that interpretation of that instruction, the defendant would be presumed to have been negligent; the burden was cast on him to prove himself free from negligence. That, of course, is not the law; the burden rests upon the plaintiff to prove the defendant's negligence.

On the other hand, if the jury only understood instruction No. 11 as stating in another way that the burden of proving negligence on the part of the deceased was on the defendant, as contended for in the opinions of Mr. Justice Wade and Mr. Justice Crockett, then that instruction was not prejudicial. Not being convinced that the erroneous instruction would probably be given this latter meaning by the jury, I dissent from the result reached by the majority. I would reverse the case for a new trial.

It is interesting to speculate what would be the decision of this court had the parties in the instant case been reversed; that is, had the defendants been suing the personal representatives of the deceased for personal injuries sustained, and had the court instructed that there is a presumption that the deceased used due care, until the contrary is proven. (See Chapter 30, Laws of Utah, 1953, providing for the survival of a cause of action for wrongful death or personal injuries against a wrongdoer.) Would we hold that such an instruction was harmless because it merely stated in effect that the burden is on the plaintiff to prove negligence on the part of the deceased? Or would we hold it prejudicial because the jury would be likely to understand that there is a presumption that the deceased was on his own side of the road and hence the plaintiff must have been on the wrong side? Could the jury infer from the fact that the deceased was killed that he was exercising due care?

Much of what has here been said arguendo has been said by me in other words in the debate which raged in the case of Tuttle v. Pacific Intermountain Express Company, Utah, 242 P.2d 764, and Gibbs v. Blue

96

Cab Company, Utah, 249 P.2d 213 (affirmed on rehearing July 15, 1953, Utah, 259 P.2d 294). Hence, much of what Mr. Justice Wade and I say in this opinion is like threshing old straw. But the matter which deals with the analysis of the validity of the "inference" supposedly arising from the fact that a person was killed in an accident and because of the "presumption" that men instinctively act to protect themselves from harm is new in this opinion. I am not aware that such matter has been so analyzed in this court before.