# CONKLIN et al. v. WALSH et al.

No. 7090.  Decided May 11, 1948.  (193 P. 2d 437.)

See 42 C. J. S., Motor Vehicles, Sec. 691.  Liability of owner under family purpose doctrine for injuries by automobile while being used by members of his family, see note, 132 A. L. R. 981.  See, also, 5 Am. Jur. 702.

Rehearing denied June 29, 1948.

*J. Grant Iverson,* of Salt Lake City, for appellants.

*Arthur H. Nielsen,* of Salt Lake City, for respondent.

LATIMER, Justice.

Appeal from a verdict by the district court in favor of the plaintiff and respondent, and against the defendants and appellants in an action for damages to the plaintiff Conklin's automobile resulting from a collision with defendant company's truck. All but $50.00 of the loss suffered by the plaintiff was paid by the Pacific Automobile Insurance Company under the terms of a $50.00 deductible automobile collision insurance policy. On motion of the defendant, the insurance company was made a party plaintiff to the action, it being the real party in interest under its right of subrogation. Asenath S. Conklin, wife of Dr. Conklin, and the driver of his car at the time of the accident, was joined as a party defendant in the cross-complaint. The suit was first tried in the City Court of Salt Lake City, where judgment was rendered in favor of the respondent and against the appellants. Upon appeal to the district court the case was tried before a jury. When both sides had rested, the court directed a verdict in favor of the plaintiff, Clifford E. Conklin, and against the defendants. In so directing the verdict, the court concluded

that both drivers were guilty of negligence, but that Mrs. Conklin was not an agent or servant of her husband the plaintiff, and therefore her negligence was not imputable to him. The two principal questions raised on this appeal are: (1) Did the trial court err in finding that the defendant Robert A. Walsh was negligent as a matter of law? And (2) Did the trial court err in finding that Mrs. Conklin was not the agent or servant of her husband in the operation of his automobile?

The collision out of which this action arises occurred March 9, 1946, at about 11:00 a. m. in Salt Lake City on South Temple Street where it is intersected by "O" Street from the north and by 10th East Street from the south. South Temple is the arterial highway and is 60 feet wide; "O" Street is 30 feet wide, and 10th East Street is 72 feet wide. The west curb of 10th East is offset three feet to the east from the west curb line of "O" Street. The stop sign for southbound traffic on "O" Street is located 18 feet north of the north curb line of South Temple, and south of the sidewalk. The north side of the sidewalk is 32 feet north of the South Temple curb line. The Conklin residence is situated on the northwest corner of this intersection. Approximately 73 feet back of their house is a garage facing on "O" Street in which the automobile in question was customarily kept.

On the morning of the accident Mrs. Conklin, driving her husband's car with his permission, was taking their daughter and a neighbor's child to a dancing lesson. Mrs. Conklin was at first unable to start the car because of a dead battery, and so, called a man from a nearby service station to come and assist. After starting the car, the man from the service station sat in his truck parked north of the Conklin garage, and watched while Mrs. Conklin drove down "O" Street into and across South Temple, where the collision occurred. The evidence was undisputed that she stopped before entering the intersection, but as to the exact point at which she stopped, the evidence is in conflict. She testified at first that she stopped "right at the stop sign"

but later admitted that in the city court she testified that she stopped at the sidewalk which is 12 to 14 feet north of the stop sign. Be that as it may, she testified that after stopping and looking both ways, and seeing no traffic coming from either direction, she proceeded across the intersection looking straight ahead, without ever again looking to the left or to the right.

The evidence as to defendant Robert A. Walsh's operation of the truck was that he was driving east along South Temple at a speed variously estimated at from 30 to 45 mph. According to his testimony, he first saw the Conklin automobile when it was just north of the stop sign approaching the intersection at a speed of 10 to 15 mph, at which time his truck was approximately a quarter of a block west of the intersection. Walsh looked to the right to see if there was any traffic approaching from the south along 10th East Street and did not look again to the north to observe the position and movement of the Conklin automobile until it was about the middle of the intersection. As he described it, "When I looked back, she was almost in front of me." Upon seeing the Conklin car immediately in front of him or almost so, he turned his vehicle to the right but was unable to avoid the collision.

Appellants argue that even though the court might have found as a matter of law that Robert A. Walsh was negligent in the operation of his truck, the question of whether or not that negligence proximately contributed to the collision should have been submitted to the jury, citing *Hess* v. *Robinson et al.*, 109 Utah 60, 163 P. 2d 510. In that case the plaintiff, traveling an arterial highway, collided with defendant's ambulance, which came into the intersection without stopping for the stop sign. The plaintiff admitted that he never saw the ambulance prior to the impact, but this court held that even had the plaintiff looked and seen the ambulance approaching, he might have reasonably concluded that it would stop before entering the intersection; and that therefore there was a question for the jury as to whether the plaintiff's negligence was a proximate cause of

the collision. Appellant seeks to rely on that case for support, pointing out that in the case at bar the defendant Walsh saw the plaintiff's car approaching the intersection and reasonably concluded that the plaintiff's driver would stop at the stop sign and wait for him to pass.

The holding in *Hess* v. *Robinson* does not sustain the appellants here because of the difference in the facts of the two cases. In the *Hess* case the vehicle entered the arterial highway from the right of the favored driver. The driver of the car traveling the through street, even though he should have seen the ambulance, which according to the evidence was traveling at some speed between 25 and 50 mph, he could not know it would not stop for the stop sign until the vehicles were so close together that he would have no chance to avoid the collision. In the case at bar the car entering from the side street came from the left of the driver traveling the arterial highway, and at a speed of only 10 to 15 mph. From a point somewhere between 18 and 32 feet north of the curb line of the through street, to the point of impact which was nearly three-fourths of the way across the through street, plaintiff's car was continuously visible to the driver traveling the arterial highway. Defendant's truck driver, knowing there was a car approaching from the north, never again looked in that direction until it was too late to avoid a collision. By his own admission the truck driver travelled at least one quarter of a block without making any further observation of a car which, at the time he first saw it, was much nearer the intersection than was his. He asserts his attention was focused on traffic that might be coming from the south. If, as he claims, he was unable to get a clear view to the south on 10th East Street, there was nothing to prevent him from reducing the speed of his truck so as to permit a reasonable opportunity to observe the approach of cars from other directions. In this case we have the driver of a truck traveling between 30 and 45 mph who knows a car is approaching from his left, keeping his eyes on what he claims to be a blind corner on his right, and ignoring the

approach of the vehicle from his left, because of the assumption that as to the latter car he has the right of way. Under the facts of this case, either the defendants were or were not, as a matter of law, guilty of negligence which proximately contributed to the accident.

The difficult question in this case is whether or not the record established that the driver of the Walsh truck was guilty of negligence as a matter of law. Mrs. Conklin's testimony that she stopped is uncontradicted. Walsh was traveling an arterial highway at a fairly rapid rate of speed. He was some considerable distance west of the intersection when he saw the other car approaching from the side street controlled by a stop sign. He thereafter completely ignored the Conklin car and drove blindly ahead without again checking the position and movement of the other car until too late to avoid colliding with it. The defendant truck driver was not justified in thus ignoring the movement of plaintiff's automobile. The duty to keep a proper lookout applies as well to the favored as to the disfavored driver. Neither driver can excuse his own failure to observe because the other driver failed in his duty. Neither driver is at any time to be excused for want of vigilance or failure to see what is plain to be seen. Drivers are permitted to cross over arterial highways after having stopped. True, they must yield the right of way to cars which are close enough to constitute an immediate hazard. This rule, however, requires the exercise of some judgment. There is still a duty on the part of the driver traveling the arterial highway to remain reasonably alert to the possibility of the disfavored driver starting across the intersection in the belief that he can cross in safety. The duty of keeping a proper lookout attends all those operating motor vehicles, and other rules of the road do not relieve any driver of the necessity of complying with this requirement.

We have not overlooked defendants' contention that their truck driver saw the car approaching the stop sign but assumed it would stop and yield the right of way. There

is no evidence in the record contradicting plaintiff's evidence that Mrs. Conklin brought plaintiff's ■ vehicle to a stop before entering the intersection. There is an admission by her that in the city court she testified that she stopped north of the stop sign. Conceding for the moment that she stopped north of the stop sign, this does not change the duty of the truck driver to be observant of her movements. Had he looked to the north at any time after she passed the stop sign, he would have seen she was proceeding into the intersection with no apparent intention of yielding the right of way to him. Because she failed to stop abreast of the stop sign cannot excuse the defendant for his neglect in failing to see her traveling into and across most of the intersection. The driver having failed to see plaintiff's automobile until too late to avoid the collision, we see no escape from the conclusion that he did not keep a proper lookout and was guilty of negligence in that omission. The trial court so held.

That there is no presumption of agency between husband and wife in the operation of an automobile merely because of the marriage relationship has been fully decided by this court in the case of *Fox* v. *Lavender*, ■ 89 Utah 115, 56 P. 2d 1049, 109 A. L. R. 105. We quote briefly from Mr. Justice Wolfe's opinion in that case, at pages 120 and 124 of 89 Utah Reports, and pages 1052 and 1053 of 56 P. 2d:

"* * * The purpose of a trip is material only in so far as it throws light upon the question of agency or the question of who has the right of control during the trip. * * * Therefore, the ultimate object of what is to be done at the end of the journey is not controlling, but simply a circumstance to throw light upon the question of whether there was the right of control during the journey. The inquiry must still be directed as to whether an agency existed in the operation of the car, or the more fundamental question of whether there was the right of control on the part of another during the time the car was operated. * * *"

"* * * The other line of authorities which hold that no presumption arises that the driver of the car is the agent of the owner

where the owner is not present are found listed in Berry on Automobiles, supra, p. 1127, § 1359. Utah falls within this class. (Citing cases.) In this jurisdiction this is the case even though a member of the family is driving. It would be the case also whether a husband was driving a wife-owned car or the wife driving a husband-owned car the owner not being present in the car. In this jurisdiction the 'family purpose' doctrine has not been adopted. *McFarlane* v. *Winters*, supra [47 Utah 598, 155 P. 537, L. R. A. 1916D, 618]."

That fact that in this case the wife was in the act of taking the daughter to her music lesson at the time of the collision does not establish agency between herself and her husband who was the owner of the car. Since the record discloses no other evidence of such a relationship, the trial judge when he determined that Mrs. Conklin was negligent correctly held that her negligence was not imputable to him.

The judgment is affirmed, with costs to respondents.

McDONOUGH, C. J., and PRATT and WADE, JJ., concur.

WOLFE, Justice.

I concur in the reasoning and the result, but in view of the position which I took in the recent case of *Hickok* v. *Skinner*, 113 Utah 1, 190 P. 2d 514, I feel constrained to add a brief word of explanation.

In the *Hickok* case, plaintiff had stopped at a stop sign, and having seen only one car approaching from the east at a distance of 400 to 500 feet, had proceeded into the intersection without again looking to the east. The immediate eastbound traffic had all passed while Hickok was stopped. The majority of this court held that plaintiff was guilty of contributory negligence as a matter of law in not having looked again to the east.

In this case, the question which confronts us is whether or not the defendant who was traveling on the through highway was guilty of negligence as a matter of law in

failing to look again in the direction of plaintiff's automobile, after having observed it at or near the stop sign when he (defendant) was about a quarter of a block (165 feet) away. The question here is the converse of *Hickok* v. *Skinner*. Although the question here is somewhat different from that in the *Hickok case*, I think the underlying fundamental principle is the same.

There are some factual details in this case which I think distinguish it from *Hickok* v. *Skinner*, and I do not regard my concurrence in this case as inconsistent with the views expressed in my dissenting opinion in the *Hickok* case. But even if no valid distinction can be made between the two cases, I must nevertheless concur, because *Hickok* v. *Skinner* is now the law of this state.