GIBBS, et al. v. BLUE CAB, Inc.

No. 7710.   Decided October 23, 1952.   (249 P. 2d 213.)

See 51 C. J. S., Motor Vehicles, sec. 522. Negligence and proximate cause as questions for jury. 38 Am. Jur., Negligence, secs. 348, 351, et seq.

---

*Heber Grant Ivins,* American Fork, *Robert B. Porter, Jr.,* and *D. M. Draper, Jr.,* Salt Lake City, for appellants.

*Skeen, Thurman & Worsley, John H. Snow,* Salt Lake City, for respondent.

HENRIOD, Justice.

This is an appeal from a judgment entered on a directed no cause of action verdict in a suit for wrongful death arising out of an intersection collision involving a bicycle and a cab. The judgment is reversed for a new trial, with costs on appeal to plaintiffs.

Plaintiffs contend that (1) the trial court's conclusion that deceased was contributorily negligent as a matter of law was erroneous, since the presumption that he was using due care for his own safety was not rebutted by defendant, and (2) that under the facts the question of (a) contributory negligence and (b) whether deceased's negligence, if any shown, was a proximate cause of the collision, properly were matters for the jury.

On November 24, 1948, at 6:40 a. m., at the intersection of 23rd St. (running east and west), and Jefferson Avenue (running north and south), residential streets of Ogden, Utah, each 55 feet wide, paved, wet, and while it was dark and raining, respondent's cab, windshield wipers operating, the butterfly window of which was open on the driver's side to prevent fogging, and whose windshield was steamed up, was being driven east on 23rd at 20-25 m. p. h. The driver and only eyewitness, who admitted that his vision was obscured, according to testimony of others, saw the front wheel of a bicycle in the cone of his bright headlights. He did not see the deceased or anything else. He swerved the cab about 40° southeasterly and struck

the front of the bicycle a glancing blow about three feet west of the center line of Jefferson. The bicycle at that time was pointed almost at the same angle, so that the two vehicles were almost parallel with each other. The cab was stopped within a reasonably short distance near the southeast corner of the intersection, where the driver alighted and, with the deceased, examined the bicycle, the deceased volunteering that he was all right and that his bicycle was damaged a little. Each then went his way. The deceased, who had resided on Jefferson just north of 23rd, died shortly thereafter on a bus which was carrying him to work. There was no lamp on the bicycle. Thus there was a violation of a city ordinance and a state statute[1], which established some negligence as a matter of law.[2] There was a stop sign on the northwest and a street light on the northeast corner of the intersection.

The court viewed the scene during the trial, on an ordinary day when factors of darkness, wetness, rain, mist, etc. were absent. A person entering the intersection from the north no doubt could see a car in daylight and headlights at night for at least a block west on 23rd.

Without mentioning or attributing the absence of the lamp as a contributing cause, the court concluded that deceased had been contributorily negligent as a matter of law because he negligently failed to look, or, having looked, failed to exercise that degree of care for his own safety attributable to that of the ordinary prudent person.

The only evidence as to what occurred at the time of and immediately prior to the accident was the fact that the cab driver saw the front wheel of a bicycle. What the deceased did prior thereto is relegated inescapably to the realm of conjecture,—even though counsel for defendant, in an excellent brief, urge that certain physical facts, such as existence of the stop sign, situs of deceased's home, a damaged

---

[1]Sec. 27E2, Ogden City Ordinances; Title 57-7-154, U. C. A. 1943.
[2]*North* v. *Cartwright*, 119 Utah 516, 229 P. 2d 871.

bicycle seat and apparent movement of the bicycle, rebutted the presumption that deceased used due care for his own safety, and established contributory negligence.

We have held that where a verdict is directed, the evidence on appeal will be canvassed in a light most favorable to him against whom it is directed.[3] Among other things, some of the factors which could influence a jury in determining the existence or non-existence of contributory negligence would be darkness, wetness, rain, mist, and the fact that the bicyclist had turned his vehicle to the left easterly on 23rd Street—factual matters ordinarily for the jury. In considering such matters and all the evidence, the jury may have determined that deceased acted as an ordinary prudent person in failing to appraise accurately the proximity of the cab or its speed, so as reasonably to have misjudged his ability to clear the intersection in safety, absolving him from the charge of contributory negligence.

As a matter of law, it cannot be said in this case *what* happened and consequently it cannot be said as a matter of law that there was or was not contributory negligence. Nor can it be divined or concluded with certainty that deceased failed to do that which may have negatived contributory negligence. We believe the facts shown in the record, such as they are, and irrespective of presumption, properly were for the jury, presenting a case where all reasonable minds necessarily need not determine an ultimate fact inconsistent with that of exercising a discretion characteristic of the reasonable prudent man.

Assuming that in one aspect, by showing a violation of the city ordinance, defendant established *some* negligence on the part of deceased as a matter of law, the problem remains as to whether absence of the lamp under all the facts was or was not a contributing proximate

---

[3]*Finlayson* v. *Brady*, 121 Utah 204, 240 P. 2d 491.

cause of the collision,—particularly in view of the fact that immediately prior to the time of impact the bicycle, and therefore the lamp, was pointed away from the vision of the defendant—a proper jury question.

We are committed to the principle that matters of negligence, contributory negligence and proximate cause generally are jury questions,[4] unless the evidentiary facts are of such conclusive character as to require all reasonable minds to conclude that the ultimate fact of negligence, contributory negligence or proximate cause does or does not exist.[5] Recognizing the rule that the trial court's conclusions will remain undisturbed unless clearly arbitrary, we believe that application to this case of the principles mentioned, being the only practical yardstick applicable in intersection cases, compels us to disagree with the trial court's conclusion.

As in other cases, the reasonable man doctrine, and the rules pertaining to the function of court and jury with respect to determination of negligence, contributory negligence or proximate cause, must be invoked in intersection cases—a type that creates more difficulty of decision than most. Difficulty arises in applying the simple, constant rules to shifting factual scenes. The most difficult cases are those where *similarity* of fact encourages citation of one group of precedents, but where *slight difference* in fact may invite equally vigorous citation of antithetical authority. It cannot be gainsaid that such slight differences not only have led to apparent conflicts in the decisions, but have led to actual conflicts, wholly irreconcilable by employment of any amount or manner of logic. The confusion resulting from applying the rules to varying factual situations is apparent in reviewing the countless split decisions, frequently punctuated by earnest and emphatic disagree-

---

[4] 10 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. ed., Secs. 6594, 6600, 6618.

[5] *Id.*, Sec. 6591, p. 503, 1st par; 38 Am. Jur., Negligence; Sec. 348; *Allan* v. *Oregon Short Line Ry. Co.*, 60 Idaho 267, 90 P. 2d 707.

ment as to whether a given set of facts should or should not have been given to the jury, or determined as a matter of law. This, our own 3-2 decision, tends significantly to illustrate the point. The authorities generally, including the decisions of our own court, have contributed to the confusion, and characteristic differences in point of view attending the human equation, provokes a ventured guess that the disharmony will persist,—*unless* we analyze each case on its own facts and categorize *it* as being or not being one involving a jury question under the reasonable man doctrine, quite irrespective of any attempt to reconcile the same by apology for, explanation of, or nice distinction between facts of decisions heretofore rendered, no two of which possibly could present analogous facts. True, in applying the rules the fallibility of humanity sometimes might provoke error an injustice, but an honest application thereof without factually distinguishing or comparing with precedents is the best we can do under our legal system where minds differ, and where fortunately, perhaps, none of us is endowed with qualities of omniscience.

It is suggested that there are cases that could be resolved on the grounds that there is such a thing as a pure and simple accident,—where neither party is negligent, although such cases be rare; but we have been prone to assume that someone *must* have been negligent in an intersection collision. In the instant case, it does not seem too unreasonable to the writer to believe that the jury well might have concluded, if it had been permitted to determine the facts, that neither the bicyclist nor the cabman acted other than ordinary, prudent persons would have done under like circumstances and conditions. In such event the collision would have been an accident involving the principle of damnum absque injuria. We think it not the inevitable conclusion that anyone killed or injured in an intersection, or the other principal in the event, of necessity must have been guilty of some carelessness contributing to the mishap. Nothing

in the cases cited by defendant[6] requires such a conclusion. No case has laid down so broad a rule, yet the confusion of the already decided ones might make it appear that such is the rule. Each case must rest on its own facts, and we are constrained to hold that the facts in this case justify presentation to the jury of the questions of defendant's negligence, deceased's contributory negligence and whether both, either or neither was a proximate cause of any injury.

CROCKETT, J., concurs.

WADE, Justice (concurring).

The presumption that the person injured used due care for his own safety has no bearing on this case. Such presumption merely places on the adversary the burden of going forward with the evidence and making a prima facie case on that issue. It disappears from the case as soon as sufficient evidence is produced from which the fact trier could reasonably find that the deceased failed to use due care. Although it is sometimes argued and the language of some decisions seem to indicate that express eyewitness testimony of the actions of the favored party at the time in question is necessary in order to overcome such presumption such is not the case for the burden of going forward with the evidence may be overcome by circumstantial evidence, for a prima facie case can be established by circumstantial evidence the same as by direct testimony. This is the Thayerian theory subscribed by Wigmore and in this kind of a case by Morgan and adopted by the American Law Institute's Model Code of Evidence and apparently approved by this court by a long line of cases.[7]

---

[6]*Bullock* v. *Luke,* 98 Utah 501, 98 P. 2d 350; *Hickok* v. *Skinner,* 113 Utah 1, 190 P. 2d 514; *Conklin* v. *Walsh,* 113 Utah 276, 193 P. 2d 437; *Gren* v. *Norton,* 117 Utah 121, 213 P. 2d 356.

[7]See Thayer, Preliminary Treaties on Evidence, p. 313 (1898); Wigmore on Evidence, 3d Ed., Sec. 2490 to 2493; American Law Institute's Model Code of Evidence, Ch. 8, and Rules 701 to 704, with comments thereon. For my views on presumptions see *Tuttle* v. *Pacific Intermountain Express Co.,* 121 Utah 420, 242 P. 2d 764, 772, 774, and authorities therein cited.

While only one other Justice concurred with what I said in the prevailing opinion in the *Tuttle* case on the evidence required to nullify this kind of a presumption, both the opinion of Mr. Chief Justice Wolfe and Mr. Justice Crockett in that case are inconsistent with the Chief Justice's contention made in that case and here that such presumption is nullified by the production of *any* evidence. Mr. Justice Crockett contended that since the evidence that decedent was negligent could be true only if he was traveling toward the south and the jury found that he was traveling toward the north the jury was correctly instructed that if they so found there was a presumption that he used due care. In other words, he held that although there was sufficient evidence to make a prima facie case still under the facts of that case the presumption was not nullified. This is inconsistent with the theory that the presumption is nullified upon the production of any evidence but is consistent with the theory that it is not nullified until a prima facie case has been made against the presumed fact.

Although the Chief Justice urges in the *Tuttle* case, as here, that such presumption disappears upon the production of any evidence on the issue of whether the decedent used due care, he emphasizes in both cases that such presumption places on the defendant only the burden of going forward with the evidence. This being true, it is clear that a party is not relieved from such burden until a prima facie case has been made in his favor. His claim that the presumption is nullified by the introduction of any evidence is inconsistent with his assertion that such presumption places the burden of going forward with the evidence on the defendant for such burden is not satisfied by the mere introduction of some evidence. Of course, some presumptions which merely deal with the burden of going forward with the evidence are nullified upon the introduction of less convincing evidence than others. Thus the presumption of sanity in a criminal case is nullified by the introduction of evidence reasonably sufficient to create a reasonable doubt that the accused was sane. In such case, it is probably correct to say that such presumption disappears upon the production of any evidence which tends to show his lack of sanity, but in the ordinary civil case even with the burden of persuasion in his favor a party does not make a prima facie case by merely creating a reasonable doubt in his favor. Usually where the term "any evidence" is used in this connection it is merely being used loosely.

A presumption is merely a rule of law requiring the trier of the facts to assume one fact from proof of another fact or set of facts. This kind of a presumption merely places on the disfavored party the burden of going forward with the evidence; it is completely

nullified upon the production of prima facie evidence to the contrary. In the absence of such contrary evidence, the court should direct the jury to assume the presumed fact. The judge and not the jury determines when the evidence is sufficient and when he concludes that it is, he submits the issue of fact which would otherwise be presumed to the jury to be determined from the evidence along with the other facts without mentioning the presumption. The facts on which the presumption is based may or may not tend to prove or have probative value in proving the presumed fact. In the *Tuttle* case, Mr. Chief Justice Wolfe said "* * * from the experience of mankind the law concludes that men do not knowingly or intentionally act in derogation of their instinct to preserve themselves". Here the basic facts are that a person was accidentally killed; since normally persons do use due care for their own preservation, the basic facts logically tend to prove that the decedent used due care. But the presumption is not this logical inference nor the basic facts themselves but is a rule of law. This rule of law ceases to affect the trial or the determination of the facts in question as soon as a prima facie case is established to the contrary, and is said to thereupon disappear from the case, but the basic fact that a person was accidentally killed still remains in evidence and, still in the light of human experience, that a person normally uses due care for his own protection, logically tends to prove that decedent was free from negligence the same as it did before the presumption was nullified by other evidence. The nullification of the presumption does not eliminate the evidence of ˍthe basic facts from the case nor nullify any logical inference that might be drawn from such facts; they remain in the case and may be considered by the jury along with the other facts in the case for what they are worth and may be weighed with the other evidence the same as though there never had been a presumption. Of course, such evidence would not be strong or convincing in the face of convincing direct evidence to the contrary. A presumption being merely a rule of law cannot be weighed as against evidence; it performs only a procedural function of which party must go forward with the evidence and prove a prima facie case; when that is proved, the presumption become ineffective and drops out of the case, but the basic facts on which the presumption is based remain in the case and may be weighed by the jury with the other evidence and their effect as evidence is only overcome by more convincing contrary evidence which is a question for the jury to decide and not for direction or comment by the court.

From the evidence produced in this case, the jury could reasonably find that, decedent rode his bicycle into an in-

tersection with a through highway and with a stop sign against him during the nighttime, without the statutory or ordinance required lights and without ascertaining that defendant's cab was approaching so nearly as to constitute an immediate hazard until it was too late to avoid a collision, and in so doing he was guilty of negligence which proximately caused or contributed in causing the accident and his death. Such being the case the presumption that he used due care for his own safety has no effect on this case.

There is another reason why this presumption does not affect the result in this case. Here the defendant has the burden of persuading the trier of the facts that decedent was guilty of contributory negligence which proximately caused his death. Such being defendant's burden he, without the presumption, has the burden of not only going forward with the evidence but also of persuading the trier of decedent's fault. So, since defendant not only has the burden of going forward with the evidence but of persuading the jury on that question, such presumption would not affect defendant's burden at all.[8]

Though there is ample evidence from which the trier could reasonably find these issues against plaintiffs, that does not mean that the court could direct a verdict against them. In determining that question we must consider all the evidence and inferences which may be drawn therefrom in a light most favorable to plaintiffs and if when so considered the trier could reasonably not be convinced that decedent was guilty of negligence which proximately caused his death, then there was a jury question and the case should be reversed. The plaintiffs do not have the burden of proving that decedent was free from negligence which proximately caused the accident or any particular fact or set of facts on those issues, but defendant is entitled to a directed verdict only if the evidence is such that the jury

[8]See Presumptions: Their Nature, Purpose and Reasons, by Edmond M. Morgan, pages 15 and 22.

would have to act unreasonably if they were not convinced of decedent's fault in respect to such issues. Defendant has the burden of proving decedent was guilty of contributory negligence proximately causing the accident. Also in considering the evidence we should keep in mind that there is no direct evidence of what decedent did or how he got to the place of the accident, and that all of the direct evidence on the circumstances surrounding the accident comes from the driver of the taxicab who is an interested witness, whose testimony may reasonably be discounted.[9] If we had decedent's version of these events, it would probably present a very different picture.

Keeping in mind defendant's burden of proof and that all the direct evidence on the events surrounding the accident comes from a witness whose interests are against the plaintiffs, I think that the jury could reasonably not believe some of the statements of fact even in the prevailing opinion and much of the cab driver's testimony. Thus the driver's fare whom he picked up immediately after the accident and decedent's son who talked with the driver during the afternoon of the day of the accident each testified that the driver told him that he did not see the bicycle until after he felt its impact with the cab. So it would be reasonable to not believe his testimony that he saw the front wheel of the bicycle when he was 10 or 15 feet from it. Also the driver's testimony that he was only traveling from 20 to 25 miles per hour, and many other details which he testified to, the trier of the facts could reasonably not believe. In this connection I think the jury should be at liberty to consider facts which are probable or only possible without direct proof of their existence in making up their minds on what to believe. Although I consider this a very close case I concur that there were issues to be presented to the jury and that the court erred in directing a verdict.

[9]See *Smith* v. *Industrial Comm.*, 104 Utah 318, 140 P. 2d 314.

WOLFE, Chief Justice (dissenting).

I concur in the statement

"that matters of negligence, contributory negligence and proximate cause generally are jury questions".

I also agree

"that where a verdict is directed, the evidence on appeal will be canvassed in a light most favorable to him against whom it is directed."

But I think the latter rule has been pushed in some cases to unreasonable lengths. I do not think it was meant to cover cases where there is, on one pan of the scale, clear and unimpeached eyewitness testimony of the physical circumstances leading up to the event of the accident and of the accident itself by disinterested witnesses attended by no inherent inconsistencies and no reasonable showing of anything which would impede their observations but rather by circumstances which impressed their observations on their minds; whilst on the other pan are placed remote or barely possible conclusions based on attenuated or questionable testimony or on imagined or strained possibilities having no substantial basis.[10]

In this case, there was a legal duty on the deceased bicycler to have a light on his vehicle. It was negligence in law not to have one. He did not have one. It is admitted in the prevailing opinion that he was guilty of "some" negligence as a matter of law. But it is said that it is a jury question as to whether the failure to carry a light was a proximate cause of the accident; that the cab driver might not have seen it anyway. But this is not a case where an impervious substance or object was intruded between the point where the light should have been and the cab driver,

---

[10]An illustration of what I mean is contained in my dissenting opinion in the case of *Tuttle* v. *Pacific Intermountain Express Co.*, 121 Utah 420, 242 P. 2d 764.

such for instance as another car which would in any event have cut off a gleam from a light had there been one. In such a case, the jury could definitely find that the intruding object would, had there been a light on the bicycle, have nevertheless made it useless and hence the lack of a light could not have been the proximate cause of the collision. One of the reasons why a light is required is because it is known that on dark, misty or rainy nights or days the gleam from a light is one of the best means of warning drivers of the presence or approach of another, although it may be of little use in bettering the vision of the driver or rider. That is the very reason travelers turn their lights on in the daytime when they go through foggy or dusty areas. That the cab driver in this case might or could not have seen the light had it been there is pure conjecture and there is really no substantial basis even for the conjecture. Certainly he whose fault makes the conjecture necessary should not have it operate in his favor. Before we can take a case from the jury, must we allow it to conjecture that even had the traveler carried a light, it would have been inefficacious where there is not even a substantial basis for such conjecture? If so, the obligation imposed by a positive duty of the law (statute or ordinance) and the purpose for which imposed will in many cases be negated. We cannot give the party, derelict in that duty, the benefit of such speculation. It must at least appear from the evidence that under the circumstances it could and *would not* have been effective and not that

"because of the weather and possible obscured vision the cab driver could not have seen the lamp in any event."

The very "darkness, wetness, rain, mist" and likelihood of mistaking depth perception makes the lamp imperative and the lack of it all the more negligent. To say that under such circumstances the jury might find that the lack of a light was not a proximate cause would seem to place a premium on not carrying a light.

I doubt in this case whether the deceased could have

"acted as an ordinary prudent [lightless] person in failing to appraise accurately the proximity of the cab or its speed, so as reasonably to have misjudged his ability to clear the intersection in safety."

But if he failed to carry the instrumentality which was designed to aid him better to judge of those factors or which would have warned or served to aid others in learning of his approach, how could he be the ordinary prudent man in his conduct on that occasion? The law requiring a light sets in part the standard of prudence required. Could such argument be made if an auto driver went out in any kind of weather without lights? The duty of the cycler was no less.

How is it with a horn or a good brake, both required by the law? If there is no horn so no sound could be emitted, could the jury, unless the circumstances were such that as a matter of law it could be said that the sound of a horn could not in any event have been heard, be permitted to speculate that the horn would not have alerted an inattentive driver or pedestrian? Only in a case where the court can as a matter of law say that the sound of the horn, had there been one and had it been sounded, would nevertheless *not* have been heard, could it be said to have been in law non-contributing to the accident. Such case would be analogous to the case where the court must say that an impervious object would have shut off the gleam from a light had there been a light. If there were no brake or only a totally inadequate brake, could the jury be alowed to speculate in a situation where brakes are intended to be used, that nevertheless had there been brakes the use of them could have had no effect in impeding the driver's vehicle? Of course, if any possible braking could not sufficiently have reduced the speed and therefore the momentum, the accident might not have been avoided but even though the effects of a stronger impact might have been. Unless the situation is such that it is clear that had there been a light, or horn

or brake, such devices would nevertheless have been utterly useless in the situation, we must presume, as against a driver who lacked any one of the required devices, that it might have aided in avoiding the accident or mitigated its severity and hence that its absence was contributory to the accident, or the damage flowing therefrom.

Outside of the factor that deceased had no lights, I think *dubitatively* here it may have been a jury question whether he proceded across the intersection as would have an ordinary prudent man. For purposes of the discussion here in progress, I assume so. But I think he was ngeligent in law in failing to carry a light and we cannot allow the jury to speculate under the facts of this case whether that the light might nevertheless not have served the purposes for which it was required so as to leave the question of proximate cause to the jury. I think the verdict pursuant to the instruction "no cause of action" should be affirmed.

In his opinion, Mr. Justice HENRIOD appears to play down the fact that the deceased did not have a light. He mentions it rather casually and then proceeds to discuss the case on the facts without including the salient fact of absence of a light seemingly on the theory that the trial court did not mention or attribute the absence of the light as a contributing cause as the basis for his directed verdict "no cause of action". Regardless of whether the trial court assigned the correct basis for his ruling, in that he may not have mentioned every ingredient which made up the contributory negligence of the deceased or regardless even if he omitted the only element which would have required him in law to take the case from the jury, his ruling on the question presented by the motion for a directed verdict must stand or fall on whether the conduct of the deceased in proceeding without a light is in law such as to prevent his heirs from recovering.

The matter then comes down to this: The deceased was clearly negligent in law in failing to carry a light; that

the absence of any warning gleam of light which was one of the very purposes for which the law required the light must necessarily be assumed to have contributed to the accident unless we shield the deceased from the consequences of his dereliction by a purely gratuitous assumption and conjecture that the mist and/or darkness would nevertheless have obscured the gleam had there been a light. Surely when the defendant goes to the extent of showing that a traveler was proceeding without a device required by the law which was designed to warn the defendant and others of the traveler's approach, he, the defendant, does not need to go further and show that had the traveler been equipped with such device it would have been efficacious in warning him (the defendant). Certainly had there been a light gleam emanating from the decedent's bicycle, it would have had some depth penetration into the gloom even though that penetration may have been somewhat in a direction away from the cab, in fact itself not certain from the evidence. The gleam might have been very faint and the jury could have concluded that the cab driver did or could not see it but when there was no light to send forth a gleam, the jury should not be permitted to speculate that even had there been one it would have done no good. Even the faintest gleam might, if traced through the chain of its effect in possibly or probably alerting a traveler in the darkness and his possible or probable response, mean the difference between life and death. Ships that pass in the night must avail themselves of every device to alert each other and avoid collision.

If a light is required by law and hence the failure of the requirement to have a light, the purpose of which is to counteract the effects of darkness or lack of visibility, is negligence in law, then implicit in the very failure to have that light (the negligence) is the fact that the failure caused or contributed to the accident since the accident grew out of the condition of darkness or impaired visibility due to

darkness. Such conclusion would be logical and is simple common sense.

If this case were withdrawn from the jury for the reasons I state, it would not amount to requiring plaintiffs to prove freedom of deceased from contributory negligence. Would the defendant have been required to show what penetrating power of gleam would have been needed on that morning in view of the fact that the deceased carried *no* light whatsoever. I cannot agree that, in the face of admitted negligence—in the face of negligence in law—a defendant must prove that had the deceased carried what the law required him to carry, it would have been adequate for the occasion. It seems but commonm sense that the defendant would not only have made out a case of negligence on the part of the deceased when it was disclosed that the latter had no light, but would have made, subject to rebuttal, at least a prima facie case of proximate and efficient contribution to the cause of the accident. To require the defendant to go further would be to make him carry the burden of anticipating matters introducible by the plaintiffs by way of rebuttal rather than visiting upon the plaintiffs a requirement

"to prove facts showing decedent's freedom from contributory negligence proximately causing the accident."

The sequence would be as follows: (1) Evidence by the heirs that the defendant was negligent or perhaps a reliance on the presumption that deceased was exercising due care for his own safety after introduction of matters of inducement.[11] (2) Defendant's evidence of his own conduct claimed to show due care and to negative the charge of his negligence and (3) in addition, evidence of the deceased's failure to perform his legally required duty of

---

[11] I should note here that Mr. Justice Wade does not think that presumption has any bearing in this case. Since I do not want to further complicate this case, already too far expanded, I shall make no issue of that matter.

carrying a light, which failure would not only be negligence in law, but since one of the very purposes for which said light was required was to warn others of his approach, would intrinsically carry the deduction that the failure to carry it was a contributing cause of the accident. (4) Matters by the plaintiffs which would show that a gleam from a light could not (not that it might not) have alerted the defendant because the situation was such that such gleam, if there had been one, would have been totally invisible to the defendant. (5) In absence of such rebutting evidence, a ruling by the court, as in this case, directing a verdict "no cause of action".

Outside of what I have said above, I shall not allude further to Mr. Justice Wade's concurring opinion in this case except as referred to in footnotes 12 and 13 below. Mr. Justice Wade in footnote 7 to the first paragraph of his concurring opinion in *this* case[12] has cited the *Tuttle* case

[12]Whether the presumption serves until evidence is produced making a prima facie case overcoming it, or as I maintain, only until some evidence on how or why the accident happened is produced after the disfavored party has proceeded; whether the "required burden" used in Mr. Justice Wade's opinion in the *Tuttle* case meant the burden of going so far as to make out a prima facie defense by persuasion, or as I then understood it and so stated, only the *burden of proceeding after* effect was given to the presumption; whether at bottom these are simply two ways of expressing the same idea; whether I am inconsistent with myself in my opinion in the *Tuttle* case and my opinion in this case; whether the opinion of Mr. Justice Crockett in the *Tuttle* case is consistent only with a holding that a prima facie case overcoming the presumption will nullify it; whether the "burden of going forward" now means the burden of persuading the fact trier that the presumption has been overcome in spite of my statement in the *Tuttle* case that I understood Mr. Justice Wade then to use it only in the sense of a duty to go forward and not a duty to persuade; whether this presumption of the use of due care for one's safety is as temporary and ephemeral as the presumption of sanity as I rather think it is; * * * whether there is not a great different between a presumption which the law furnishes because of the experience of mankind and an inference which arises out of the evidence in the very case; and whether if the presumption

as authority of this court for a proposition which I do not think is established in this state because I do not think that more than one Justice joined in that part of his opinion in the *Tuttle* case dealing with the efficacy and duration of the presumption of due care for his own safety which attends a decedent killed in an accident.[13]

disappears as I suggested, the inference may stay in as part of the evidence in the case; whether putting the duty on the judge to decide if the quantum of the evidence is sufficient or insufficient to make a prima facie case against the presumption so that it goes out or stays in; whether this does not introduce a rule which complicates the procedure applying to the presumption under discussion; whether, if the judge decides that the evidence is not sufficient to make a prima facie case against the presumption it stays in even though not mentioned as such, and whether anything is gained beyond what could be deduced or inferred by the jury if the presumption stays in unmentioned; and whether, if there is contrary evidence but not sufficient in the mind of the judge to overcome the presumption the judge should "direct the jury to assume the presumed fact"—these and other questions which occur to me prompted by footnote 7 of Mr. Justice Wade's opinion, I cannot stay to discuss. They will surely press for answers at a later time when fact situations make more apposite their consideration.

[13]I call attention to Mr. Justice Wade's citation of *Tuttle* v. *Pacific Intermountain Express Co.*, supra, in his footnote 7 as authority for the statements made in the *first* paragraph of his concurring opinion in this case. I express no opinion at this time as to the correctness or incorrectness of the principles stated by him in that paragraph. But I doubt if the case of *Tuttle* v. *Pacific Intermountain Express Co.*, supra, can be cited as court authority for any of those statements. There was no majority opinion in that case on the question of the extent or efficacy of the presumption that one uses due care for his own safety. Mr. Justice Wade wrote the main opinion in that case. That opinion was concurred in by Mr. Justice McDonough. Mr Justice Henriod did not participate. Mr. Justice Crockett expressly avoided passing upon the office and extent of the presumption or on the question of when the presumption was nullified or at what point of the case it went out and the amount of evidence required to overcome it, and this on the theory that the jury had decided that the deceased had been going north and hence the conclusion was inevitable that the negligence of the P. I. E. had caused the death. But at all

I agree that it is

"not the inevitable conclusion that anyone killed or injured in an intersection [collision], or the other principal [party] in the event, of necessity must have been guilty of some carelessness contributing to the mishap"

but I am constrained to add to an observation to that statement.[14]

events that case could not have decided the question for which Mr. Justice Wade cites it as authority in this case. In that case I dissented stating so far as the matter of the principle was concerned, I could agree with Mr. Justice Wade that the deceased being clothed with the presumption, the defendant must meet the "required burden", if by the required burden was meant "only, [the burden] of going forward * * * [with] some evidence of how the accident happened". An examination of my dissenting opinion shows that I went no further. I expressly said "The 'required burden' as used in the quoted sentence, I assume, is not that of satisfying a particular quantum of proof or of introducing enough evidence to satisfy the jury that the presumption or presumptive fact is overcome. The *burden is only that of going forward*." (Emphasis is part of the quotation.) At another point in my opinion I stated "Hence, where there is *any* evidence [emphasis is part of the quotation] which shows how or why the accident happened (circumstances of it) the presumption that the party who was clothed with it used due care, is sluffed off and the plaintiff is left with his proof, * * *." How the above can be construed to be in support by me of the statement seemingly included in footnote 7 of Mr. Justice Wade's opinion, I am at a loss to understand.

There can be no *stare decisis* by a minority of the court. Where one judge does not participate and another dissents on the very question supposed to have been decided, and a third avoids deciding it by taking a view that supposedly does not require the question to be decided, no law in respect to that question is laid down by such decision of the court.

[14]Judging from many cases which came before me while I was on the trial bench and from the records on appeals to this court and my experience in life, it is my opinion that most accidents are caused by the negligence of one or both or more parties and could with due care have been avoided; and this is especially true with intersection

collisions. The accident that is a pure mishap or unavoidable accident is a rarity.

There are careful drivers and reckless and indifferent ones. The person who is careful and who suffers injury from the negligence of another should obtain redress. What should be guarded against is a policy which permits recovery in flimsy or manufactured or undeserved cases.

The fault lies largely with the courts and that applies also to the courts of review. The whole problem of fixing blame and assessing damages involves effects which transcend those that attend any individual case or cases. It involves the principle of distribution of risk by a pooling process. It involves a policy of encouraging automobile owners to carry liability insurance. This is a healthy practice which should be extended and encouraged. But the proper distribution of risk suffers if a premium is placed on permitting the unentitled to recover. The rates for this type of insurance are increasing apace. Under inflationary conditions, people, especially those with fixed or near fixed incomes, can hardly afford this type of insurance and on a tight budget tend to take a chance and dispense with it, at times with severe economic and health consequences to themselves, their families and/or those they may injure. So the effect of easy recoveries and large verdicts is transferred to the insurance companies and from them to the rate payers and finally to the public at large by increased rates. The problem is one of national importance. Juries, and at times, I think, judges forget that the barrel from which the money to pay damages comes from is not bottomless. Until some better method of handling claims for recovery for damages actually suffered from the fault of another is devised by society than the one which holds before plaintiff's attorneys large prizes in the form of a contingent substantial portion of a collected verdict and before insurance attorneys' motives to defeat such verdicts by every means legally available—and sometimes just available,—the temptations on both sides will be flagrantly present. Under such circumstances the battle for the mind of the judge and for the minds of the jurymen will be so intense as to not be conducive of the calm, judicial atmosphere and inquiry which produces the application of sound legal principles and dispassionate and objective fact finding. The immediate remedy lies partly in withdrawing from the jury by granting a motion to dismiss or motion for a directed verdict or motion for judgment notwithstanding the verdict when, as in this case, it clearly appears that in law there was negligence on the part of complaining or deceased party and that such negligence proximately caused or substantially contributed to the injury to such party; in giving even

handed treatment to both plaintiffs and defendants; in not straining to find prejudicial error in instructions because the verdict seems unsatisfactory to the reviewing judge; in not reversing judgments because of claimed prejudicial instructions when they are reasonably clear and adequate unless it is apparent that the claimed error in the law embraced in the instruction is of such a nature as could be reasonably expected to have had an efficient influence on the jury; in not concluding that a jury could "reasonably find" what no man of common sense and reason could find; in not stretching "reasonable" to include the preposterous nor the near impossible, nor what is not common sense; in cutting down verdicts clearly excessive compared to reasonable verdicts for comparable impairments or injuries.

McDONOUGH, J., concurs in the dissenting opinion of WOLFE, C. J.