PETER KIEWIT SONS COMPANY, a Nebraska corporation, Morrison-Knudsen Company, Inc., an Idaho corporation, Mid-Valley Utility Constructors, Inc., a Texas corporation, individually and engaged in and doing business under the style and name of Arch Dam Constructors, a joint venture, and Boyd Peterson, Appellants,

v.

Jimmy D. CLAYTON, Appellee.

PETER KIEWIT SONS COMPANY, a Nebraska corporation, Morrison-Knudsen Company, Inc., an Idaho corporation, Mid-Valley Utility Constructors, Inc., a Texas corporation, individually and engaged in and doing business under the style and name of Arch Dam Constructors, a joint venture, and Boyd Peterson, Appellants,

v.

Beatrice WATKINS, Jacqueline Jean Newman, Nancy Sue Timbrook, Ruby Diane Moody, and Mary Lou Watkins, minor, and Kathy Lynn Watkins, minor, by and through their guardian Ad Litem, Beatrice Watkins, Appellees.

Nos. 8395, 8396.

United States Court of Appeals Tenth Circuit.

Oct. 5, 1966.

F. Robert Bayle, Salt Lake City, Utah (Wallace R. Lauchnor, Salt Lake City, Utah, on the brief), for appellants.

Layne B. Forbes, Salt Lake City, Utah (Charles E. Bradford, Salt Lake City, Utah, on the brief), for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

HILL, Circuit Judge.

These two diversity cases, each with the requisite amount involved and arising from the same facts, were consolidated and tried together in the district court.

The corporate appellants. who were defendants below, as joint venturers, were engaged in the construction of Flaming Gorge Dam, located in Utah. Material for the work was being hauled some sixteen miles along the Bureau of Reclamation highway, which ran generally in a north-south direction. At a point approximately 2½ miles north of the dam site, which was located at the south end of the highway, South Boulevard provided access to the highway from the small community of Dutch John, located a short distance east from the highway. The highway has two lanes, is approximately 31 feet wide at this intersection, and is paved. South Boulevard is a paved four lane highway approximately 68½ feet wide at this intersection and terminates at that point, thus the two highways form a T intersection.

On July 2, 1962, around 7:30 a. m., a 1956 Buick automobile containing the driver and two passengers was travelling west on South Boulevard from Dutch John toward the paved highway. When it pulled out on the highway, it was struck by an unloaded tractor-trailer unit weighing about 20 tons, and being driven by appellant Boyd Peterson, an employee of the joint venturers and who was acting within his scope of employment at the time. The driver of the car and one of the passengers were killed, the other passenger, appellee Jimmy D. Clayton, survived but suf-

fered serious injuries. At the time of the accident, the weather was clear, the surface of the highway was normal, and the vision of the drivers of both vehicles was unobstructed. Clayton brought suit in Number 8395, seeking damages for his personal injuries and the plaintiffs in Number 8396 brought suit, seeking damages for Jack Watkins' wrongful death. If the driver of the automobile was negligent, his negligence is not imputable to the passenger-appellees, therefore, the sole issue tried below was whether or not the truck driver was negligent.

There were two jury trials. In the first, the jury returned a verdict for the defendant-appellants, but, upon motion by the plaintiffs, the court granted a new trial. In the second trial, the jury rendered verdicts for the plaintiff-appellees in both actions, and it is from these verdicts appellants take this appeal.

Appellants first claim a reversible abuse of discretion by the trial court in granting the new trial after the first jury verdicts. The court granted the new trial on the basis that the verdict was inconsistent with the great preponderance of the evidence.

 A motion for a new trial on the ground that the jury's verdict is against the weight of the evidence normally presents a fact question and is addressed to the sound discretion of the trial court; and that court's decision will not be reviewed in the absence of a showing of an abuse of discretion. Locke v. Atchison, Topeka and Santa Fe Railway Company, 10 Cir., 309 F.2d 811; Coffey v. United States, 10 Cir., 333 F.2d 945; United States v. Socony-Vacuum Oil Company, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. Keeping this well established rule in mind, let us examine the record transcribed at the first trial to see if the trial court abused its discretion in granting a new trial.

The evidence revealed that the car in which appellee Clayton and the decedent were riding approached the "T" intersection travelling west; it stopped [1] at the stop sign which was located some 38 feet east of the east edge of the north-south highway; it slowly moved from the stop sign to the highway and then suddenly pulled out onto the highway and was evidently in the process of negotiating a left-hand turn to travel south when it was struck by appellant's tractor-trailer. The tractor-trailer was travelling north and hit the car in the right-hand lane. The appellant Peterson made no attempt to stop the truck. There were no skid marks. Evidently, his only effort in avoiding the collision was to move slightly over into the left-hand lane of traffic.

 The law to be applied in the case is that of Utah. The trial court felt the case of Conklin v. Walsh, 113 Utah 276, 193 P.2d 437, was controlling. That case laid down the rule that a favored driver (which appellant Peterson was) has a duty to keep a proper lookout for drivers entering the highway from side roads and that if a favored driver strikes a car entering from a side road when by keeping a proper lookout and taking steps to avoid it he could have averted the collision, then the favored driver would be negligent. As appellants point out, it is true that in this case appellant Peterson testified that he did keep watching the car as he continued down the road in the tractor-trailer unit. However, it is not enough to just keep a lookout. The driver on the favored road must also take whatever action a reasonable person would think necessary to avoid a collision. Here, appellant Peterson testified that the car was moving right up until the time the driver "gunned up" and pulled out onto the highway. Peterson proceeded on down the highway on the assumption that the car would stop. As stated in the Conklin case, supra, 193 P.2d at 439, "There is still a duty on the part of the driver travelling the arterial highway to remain reasonably alert to the possibility of the disfavored driver starting across the intersection in the belief that he can

---

1. The driver-appellant Peterson testified that the car "almost stopped".

cross in safety." And if the favored driver is confronted with facts which would lead a reasonable man to believe that the disfavored driver will start across the intersection the favored driver must slow down his vehicle, stop, or take some reasonable steps to avoid a collision when he is able to do so. The question in this case was whether or not the appellant Peterson could reasonably have taken steps to avoid the collision. Considering Peterson's own testimony and the testimony of others taken at the first trial, there is sufficient evidence to support the trial court's action in granting a new trial because "* * * the evidence definitely established that the car in which the decedent and Clayton were riding properly stopped at the stop sign, and proceeded toward the intersection at a time when the truck was a sufficient distance away to permit being gradually slowed down in avoidance of the collision." There was no abuse of discretion by the trial court.

Appellants next contend that the court erred in instructing the jury in the second trial. After instructing the jury, the trial court asked if counsel wished to object to the instructions given and appellants did object. Appellants then asked the court to give a more detailed instruction on a certain Utah statute which deals with intersection traffic. The trial court read to the jury a portion of the statute and commented upon what it had read. Appellants made no objection to either the reading of the statute or to the comments made by the trial court, but now urge that the trial court's comments constitute reversible error. This appellants cannot do. Rule 51, Fed.Rules Civ.Proc., makes it crystal clear that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." See Miller v. Brazel, 10 Cir., 300 F.2d 283; Federated Mutual Imp. & H. Ins. Co. v. Fairfax Equip. Co., 10 Cir., 261 F.2d

207. If appellants were dissatisfied with the court's corrective instruction, they should have said so and afforded the trial court an opportunity to consider their objections before the jury retired. Appellants cannot wait and make their first complaint in this court.

Lastly, the appellants contend that the trial court erred in denying their motion for a directed verdict in the second trial. Appellants base this contention on their claim that the evidence shows as a matter of law that when the car pulled onto the paved road the tractor-trailer unit was so close that the driver-appellant had no opportunity to avoid the collision. When the propriety of the trial court's ruling on a motion for a directed verdict is presented for review in this court, the evidence and the inferences to be drawn therefrom must be considered in the light most favorable to the party against whom the motion is directed. If, when viewed in this manner, the evidence and the inferences to be drawn therefrom, are such that reasonable minded persons in the exercise of fair, impartial judgment may reach different conclusions upon the questions of fact involved, the motion should be denied and the question submitted to the jury. Mutual Life Insurance Co. of New York v. Bohlman, 10 Cir., 328 F.2d 289; Transcontinental Bus System, Inc. v. Taylor, 10 Cir., 265 F.2d 913. A careful reading of the record transcribed at the second trial makes it abundantly clear that reasonable minded persons could, indeed, reach different conclusions on the question of fact involved, i. e.: Should the truck driver have taken some more positive action to avoid the collision and did he have adequate space and time in which to do so?

The testimony reveals that the jury had to resolve some conflicting testimony regarding, among other things: The distance the appellant-driver was from the intersection when the driver of the automobile pulled away from the intersection, the speed at which the tractor-trailer unit was travelling, the speed

at which the automobile travelled from the stop sign out onto the paved road, and whether or not the driver of the tractor-trailer should have yielded the right-of-way to the driver of the automobile. All of these questions presented issues of fact and were properly left to the jury for its consideration. The trial court committed no error in refusing to sustain appellants' motion for a directed verdict.

Affirmed.